In re the MARRIAGE OF Jennifer K. McCURNIN and David S. McCurnin

Upon the Petition of Jennifer K. McCurnin, Appellee,

And Concerning David S. McCurnin, Appellant.

No. 02–0772.

Supreme Court of Iowa.

May 12, 2004.

John R. Hearn, Des Moines, for appellant.

Patricia A. Shoff and Diane M. Stahle of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee.

LAVORATO, Chief Justice.

This is a proceeding to enforce a dissolution decree as to child support and to modify the decree to extend alimony. David S. McCurnin, against whom the application was filed, appealed from a district court judgment. He claimed the district court erroneously (1) found he was in arrears in child support, (2) computed his future child support, (3) extended alimony beyond a date set in the decree, and (4) awarded Jennifer K. McCurnin, who filed the application, attorney fees. David also challenged an interim child support award the district court entered following the appeal. Finally, David sought a credit against future child support for alleged overpayments of such support.

We transferred the case to the court of appeals, which affirmed on all the issues save the interim child support award, an issue it did not address. We granted David's application for further review.

On our de novo review, we find the district court and the court of appeals erroneously determined that David was in arrears in his child support and erroneously determined his future child support obligation. We also find that the district court and the court of appeals correctly determined that the decree should be modified by extending alimony beyond the date set in the decree and in awarding Jennifer attorney fees. However, we conclude the alimony contingency should be modified. Although the court of appeals did not address Jennifer's request for appellate attorney fees, we conclude she is entitled to them. Finally, we reject David's challenge to the district court's interim support order and his request that he be awarded a credit for any alleged overpayments of child support.

Accordingly, we affirm in part as modified and vacate in part the court of appeals decision; we affirm in part as modified and reverse in part the district court judgment; and we remand the case with directions.

**I. Background Facts.**

On September 20, 1991, the district court entered a decree dissolving the parties' twenty-year marriage. Five children were born of the marriage: Justin, born July 9, 1972; Misha, born April 5, 1976; Travis, born October 11, 1978; Caressa, born May 11, 1984; and Spencer, born April 23, 1987. The decree awarded the parties joint care, custody, and control of the minor children with Jennifer as the primary custodian subject to reasonable visitation in favor of David, so as not to interfere with the health, education, and welfare of the minor children.

The decree ordered David to pay child support in the amount of $1800 per month,

> to commence on the 1st day of October, 1991, with a like payment to be made on the first day of each and every month thereafter, until such time as each child attains the age of 18 years, or graduates

from high school, whichever event shall last occur; or dies, marries, or otherwise is legally emancipated, whichever event shall first occur. At such time as [David] is no longer obligated for the payment of child support for any of his children, pursuant to the provisions of this paragraph, at that time, his child support shall be adjusted to comply with the Child Support Guidelines then in effect....

Additionally, the decree ordered David to apply the appropriate Child Support Guideline percentage to any employee bonus income and pay that amount to Jennifer:

Additional child support, in an amount equal to the current Child Support Guideline percentage, shall be paid by [David] within 14 days from the receipt by [David] of any bonus income from his employer. Presently, such guidelines require payment of 51.5 percent of net monthly income.

The decree also imposed year-end income reporting obligations, as follows:

At the end of each calendar year, [David] shall provide [Jennifer] with a copy of his W–2 for the preceding year. Should [Jennifer] become employed, [Jennifer] shall notify [David] and shall provide [David] with verification of net monthly pay, in order that the child support obligation, required pursuant to the provisions of this paragraph, may be adjusted, if necessary, in accordance with the Child Support Guidelines then in effect. At the end of each calendar year, [Jennifer] shall, upon receipt of her W–2, if any, immediately provide a copy of said W–2 to [David].

The intent of this Decree is that [David] will, during each calendar year, pay child support in accordance with the Child Support Guidelines in effect during the calendar year. A copy of said child support guidelines is, by this reference, made a part hereof, and is included as a part of this Decree.

The decree also ordered David to pay Jennifer alimony in the amount of $904 per month,

to commence on the 1st day of October, 1991, with a like payment to be made on the first day of each and every month thereafter, until such time as [Jennifer] shall die, remarry, or assume joint physical residence with an unrelated adult male, whichever event shall first occur. Provided, further, that the alimony payments required, pursuant to the provisions of this paragraph, shall terminate upon the 1st day of the 121st month of payment, i.e., November 1, 2001, unless, upon application by [Jennifer], filed at that time, [Jennifer] establishes that [Jennifer] is in need of, and entitled to, alimony beyond said date.

In addition to the periodic alimony, David was ordered to pay Jennifer a lump sum alimony payment of $4000 within ten days after entry of the decree.

The decree awarded Jennifer the marital homestead, investments in her name, two vehicles, and fifty percent of David's 401(k) plan. The decree also awarded Jennifer all of the household furniture, furnishings, and appliances in the homestead together with furs, jewelry, personal checking and savings accounts, and all other personal effects in her possession.

The decree awarded David the parties' summer cottage property in Minnesota together with the household goods, furniture, and furnishings in the cottage. The decree also awarded David his boat, car telephone, personal checking and savings accounts, and all other personal effects in his possession. In addition, the decree awarded David all of his right, title, claim, and interest in the Nellie McCurnin Trust.

The decree ordered David to pay 100 percent of the children's tuition expenses at Dowling High School and 100 percent of the children's college expenses until each child reached age twenty-two. He was also ordered to maintain medical, hospital, and dental insurance for the minor children and to maintain a life insurance policy in effect with the children as beneficiaries in an amount not less than $100,000 for so long as his child support obligation remains.

Since the decree, David has remarried and resides in West Des Moines. In connection with David's purchase of his new residence, Jennifer executed a receipt and satisfaction acknowledging payment of all sums due to her through June 8, 1994.

Following entry of the decree, David paid off Jennifer's share of his 401(k) plan in the amount of $13,570.19, which Jennifer used to pay off the mortgage on the residence awarded to her.

Since the entry of the decree, three of the parties' minor children have attained the age of majority, completed the pursuit of their college education, and are now employed. The two youngest children, Caressa and Spencer, live with Jennifer. Caressa is a senior at Dowling High School, and Spencer is in the eighth grade at St. Augustin School.

Jennifer and David are in good health. At the time of the hearing on the matter now before us, Jennifer was working part-time. David has continued in the same employment that he had at the time of the dissolution.

## II. Proceedings.

On October 18, 2000, Jennifer filed an application for modification of and application to enforce the decree of dissolution. In her application, Jennifer sought to extend the alimony beyond the date of the decree. As to the application to enforce the decree,

Jennifer sought payment of child support from David's bonus income, claiming she had "not been paid any additional child support from [David's] bonus income." She also asked that David pay her attorney fees and costs of the action.

On November 9, 2000, David answered the application and asserted a number of affirmative defenses. On April 16, 2001, David filed his own application to modify the decree, seeking to eliminate the prospect of future alimony payments, modify child support, and modify the parties' obligations for the children's college expenses. He also asked that the court order Jennifer to pay his attorney fees, expenses, and costs. Jennifer filed an answer, denying the material allegations and seeking to have the court order David to pay her attorney fees, expenses, and costs.

On September 18, 2001, the district court heard the matter and later filed its ruling. The court rejected David's argument that only his earned income should be used to calculate child support, found that Jennifer agreed that payments were made directly to her, and found that David owed Jennifer $29,649 in back child support. The court also found that Jennifer had established a need for further alimony and awarded her alimony of $1500 per month starting November 1, 2001, "which shall terminate at her age 62, remarriage, or death whichever last occurs unless upon application by Jennifer at that time she can establish that she is in need of and entitled to alimony beyond that date."

Based on the alimony award of $1500 per month, the court ordered David to pay $1465 per month in child support, "pursuant to the same terms and conditions of the Decree of Dissolution of Marriage previously entered in this matter on September 20, 1991."

The court also ordered David to pay Jennifer's attorney fees in the amount of $12,000 and the costs.

Following entry of the court's ruling, David filed a motion to enlarge, amend, and reconsider pursuant to Iowa Rule of Civil Procedure 1.904(2). The court specifically addressed some of the issues in the motion and rejected the balance of those issues.

Jennifer sought interim support, claiming David had not made any alimony payments in 2002 and that he did not plan to because he intended to appeal that part of the court's order. David appealed and while the appeal was pending, the district court granted Jennifer's application for interim increased child support after David filed a bond to stay enforcement of the alimony award. David appealed the interim support order as well and we consolidated the two appeals.

We transferred the case to the court of appeals, which affirmed the district court's ruling regarding the issues David raised in his appeal. The court did not address the interim increased child support issue. Later, we granted David's application for further review.

We set out additional facts as they relate to the issues we discuss.

## III. Issues.

On appeal, David contends the district court erred in (1) finding that he was in arrears on child support payments, (2) computing his future child support on trust and other non–W–2 income, (3) modifying the decree by allowing alimony beyond the ten years specified in the decree, (4) increasing his child support during the appeal, and (5) awarding Jennifer attorney fees. David also contends the district court erred because it did not bar the alleged child support arrearages on the grounds of estoppel, laches, or accord and satisfaction. Because of our determination of the issue of child support arrearages, we do not address this last issue. Finally, David asks that we award him a credit on future child support for alleged overpayments of child support since the decree.

Jennifer asks for appellate attorney fees.

## IV. Scope of Review.

■ Because this is an equitable proceeding, our review is de novo. *See* Iowa R.App. P. 6.4. In equity cases, especially when considering the credibility of witnesses, we give weight to the district court's findings of fact, but we are not bound by them. *Id.* R. 6.14(6)(*g*). Because interpretation of child support guidelines is a legal question, our review of such interpretation is for errors at law. *See Seymour v. Hunter,* 603 N.W.2d 625, 626 (Iowa 1999).

## V. Alleged Child Support Arrearages and Credit for Alleged Child Support OverPayments.

Because these issues are related, we discuss them together.

As mentioned, the district court found David to be in arrears by $29,649. In computing this amount, the district court accepted David's testimony that he paid all of his child support including the support based on his bonus income. The district court's calculation of child support arrearages included David's (1) yearly trust income from the Nellie McCurnin Trust, (2) trust and other capital gains distributions from the same trust, including the $203,042 one-time capital gain from the sale of trust property in 1995, (3) David's other personal non–W–2 income, such as interest and dividends, and (4) retirement contributions withheld from David's paychecks.

David challenges the calculation of the arrearages on several grounds. He contends the decree was very specific in basing his child support on his W–2 income and does not contemplate child support based on any other income except W–2 income. In addition, he contends Jennifer never filed a pleading asking the court to modify the decree to include non–W–2 income on the ground that there existed a material and substantial change in circumstances not contemplated at the time of the decree warranting a change in the decree's child support formula.

David testified that he reviewed his bank records for ten years and the Polk County child support records. From those records, he prepared exhibits showing that if only his W–2 income (monthly salary and year-end bonus) is considered he overpaid child support by $79,001, most of which was attributable to direct payments to Jennifer. According to his calculations, the overpayment resulted because he continued to pay year-round monthly support for five children even after two and later three turned eighteen, and he was no longer required to pay monthly child support for them. On cross-examination, he conceded he brought no records to court to substantiate payments made directly to Jennifer.

Jennifer testified David made all of his periodic child support and alimony payments but was not satisfied that he had made all child support payments due on David's bonus income. Like the district court, we find that David made all of his periodic child support payments and child support payments based on his bonus income. We also find that he made all of his alimony payments under the decree.

■ We reject David's request for credit against future child support for the alleged overpayment for three reasons. First, he made no request for such a credit in his pleadings, his proposed findings to the district court, or in his post-trial motion to enlarge, amend, and reconsider pursuant to Iowa Rule of Civil Procedure 1.904(2). Second, the alleged overpayment is based strictly on David's testimony with no supporting documentation, which casts considerable doubt as to the magnitude of his claim. Last, we consider him a volunteer to the extent that he made any overpayments and therefore not entitled to any credit.

■ That leaves for our determination the propriety of the district court's inclusion of (1) yearly income from the Nellie McCurnin Trust, (2) trust and other capital gains distributions from the trust, including the $203,042 one-time capital gain from the sale of trust property in 1995, (3) David's other personal non–W–2 income, such as interest and dividends, and (4) retirement contributions withheld from David's paychecks.

■ For the following reasons, we agree with David that the district court erred in including any of this income. The decree here was a stipulated agreement. As such, once approved, the agreement is "interpreted and enforced as a final judgment of the court." *In re Marriage of Handeland,* 564 N.W.2d 445, 446 (Iowa Ct.App.1997).

■ In determining the correct amount of child support, the net monthly income of the parties must be computed. *State of Iowa ex rel. Nielsen v. Nielsen,* 521 N.W.2d 735, 737 (Iowa 1994). Net monthly income means the gross monthly income less deductions for certain identified items. Iowa Ct. R. 9.5. All income that is not anomalous, uncertain, or speculative should be included for the purpose of determining a child support obligation. *In re Marriage of Nelson,* 570 N.W.2d 103, 105 (Iowa 1997) (one-time bonus not in-

cluded in calculating guideline child support). As to bonus income, the payor's income is evaluated to see if the amount paid was consistent from year to year. *Id.* If the bonus was consistent, the bonus is included in the gross income figure. *Id.*

The decree requires David to pay Jennifer as part of child support a percentage of his *employment* bonus. In fact, the decree required David to give Jennifer a copy of his W–2 for the preceding year. The decree also required that if Jennifer became employed, she was to notify David and provide him with "verification of net monthly pay, in order that the child support obligation, required pursuant to the provisions of this paragraph, may be adjusted, if necessary, in accordance with the Child Support Guidelines then in effect." This language suggests that David's net monthly income for child support purposes is limited to employment income reflected on his W–2. The decree did not require David to give Jennifer copies of his tax returns, which would include a figure for all income. The same thing is true as far as Jennifer is concerned. The decree likewise required her to provide David a copy of her W–2 for the preceding year and did not require her to give David copies of her tax returns.

Moreover, the decree, which awarded David his interest in the Nellie McCurnin Trust, did not include, as David's net monthly income, trust payments to David. He was not receiving payments from the trust at the time because his mother was still alive, and he was not entitled to receive such payments until her death. Nor did the decree make reference to David's anticipated future receipt of trust income.

■ For all of these reasons, we are satisfied that the child support awarded in the decree was based solely on W–2 income—wages including bonuses. We note that Jennifer did not appeal following the

entry of the decree. The decree was therefore res judicata as to what was to be considered in calculating David's child support obligation until a modification changed its provisions. *See In re Bisenius,* 573 N.W.2d 258, 260 (Iowa 1998).

We therefore conclude the district court and the court of appeals erroneously determined that David was in arrears concerning his child support obligation.

### VI. Alimony.

■ As mentioned, according to the decree, Jennifer's alimony was to terminate on November 1, 2001. She filed an application to modify the decree requiring David to continue the alimony. The district court obliged by awarding Jennifer alimony in the amount of $1500 per month starting November 1, 2001.

In his post-trial motion to enlarge, amend, and reconsider, David challenged the award. The main thrust of his argument in the district court was that Jennifer failed to show a substantial change in circumstances to justify continuation of the alimony.

Iowa Code section 598.21(8) (Supp.2001) allows for a modification of an alimony award "when there is a substantial change in circumstances." This provision also provides that "[i]n determining whether there is a substantial change in circumstances, the court shall consider" a number of specifically listed factors. Among the factors relevant here are "[c]hanges in the employment, earning capacity, income or resources of a party" and "[o]ther factors the court determines to be relevant in an individual case." Iowa Code § 598.21(8)(*a* ), (*k* ).

■ Section 598.21(8) must be considered in light of other well-established principles governing modification. For example, the change in circumstances must

be permanent or continuous rather than temporary and must not have been within the contemplation of the district court when the original decree was entered. *In re Marriage of Maher*, 596 N.W.2d 561, 565 (Iowa 1999). The party seeking to modify a dissolution decree must show, by a preponderance of the evidence, the change in circumstances. *Id.* at 564–65.

An unknown earning potential of a spouse may be considered in determining whether there has been a substantial change in circumstances sufficient to extend alimony. *In re Marriage of Sjulin*, 431 N.W.2d 773, 777 (Iowa 1988). Jennifer did not work outside the home during the parties' twenty-year marriage and for five years after the dissolution. So her earning potential was unknown at the time of the decree.

Since 1995, Jennifer's employment has been part-time and at minimum wage or slightly above. She has minimal clerical skills and no computer training. Until 2001, she has never made more than $4800 per year. Up to the time of the hearing on the modification, she had earned $5672.03 and estimated she would earn $8500 for the year. So her earning potential is now established, which by any measure is below poverty level.

Jennifer has not been able to work on a full-time basis or acquire additional employment skills since the dissolution because of the responsibilities of caring for the parties' five children, who at the time of the dissolution ranged in age from four to nineteen. According to her testimony, which we accept, child care for the children was more than she could possibly earn at any job she could have. In addition, she simply had neither the time nor the money to return to school for further training.

Three of her children corroborated Jennifer's testimony that she had 100 percent of the responsibility of caring for the children since the dissolution. She had little or no break from the day-to-day duties of parenting, including transporting the children to dentist and doctor appointments, school events, sports and extracurricular activities, cooking, cleaning, doing laundry and ironing, baking, grocery shopping, helping the children with their homework, taking responsibility for religious training, church attendance, and discipline. In addition, she and her children did yard work and house maintenance because of lack of funds to hire the work done. In the ten years since the dissolution, Jennifer has not been away from her children on a vacation or for any other reason except for one night for employment reasons in 1998. David never disputed any of this testimony.

Moreover, the children have never spent an overnight with David, who admitted that his visitation was sporadic and usually involved a dinner on a Sunday night once or twice a month. His lack of interaction with his children was of his own doing because Jennifer encouraged the children to see their father.

Given the number of children and the attendant responsibilities for them, it certainly was within the contemplation of the court that David would take on his share of responsibility, which would have allowed Jennifer to pursue whatever training he now claims she should have pursued to become self-sufficient.

One other fact that was not in contemplation of the court at the time of the decree is the asthmatic condition of the parties' youngest son. The condition developed after the dissolution. The child's condition has required Jennifer to negotiate with her part-time employers for the ability to leave on a moment's notice because of the child's asthma attacks that

have occurred on a weekly basis for several years.

Jennifer's primary assets include her home valued at $116,180 and securities valued at $22,000. In addition to outside income already mentioned, at the time of the modification hearing, Jennifer was receiving $904 per month in alimony and $2281 per month in child support. Her monthly expenses totaled approximately $4000 per month.

As far as David is concerned, his financial condition has vastly improved since the decree. In 1992, the year following the dissolution, his total income was $80,682. Over the last three years his income has averaged $113,288. As mentioned, in 1995 he received a distribution in excess of $200,000. In addition, he has a one-fourth interest in the Nellie McCurnin Trust which owns property valued at $1,400,000, and his interest in his pension plan is $119,000. David also has a defined benefit plan that will pay him $20,000 per year upon retirement. David did not include his assets in his financial statement prior to the modification hearing, so we have no way of knowing what his additional assets are other than his testimony concerning the pension plan, benefit plan, and his interest in the trust.

When asked whether he had the ability to continue paying alimony, David replied that he did.

Given all of this evidence, we are satisfied that Jennifer has shown a substantial change in circumstances justifying extension of the alimony beyond November 1, 2001 in the amount of $1500 per month. Moreover, from this evidence we find such change was not in the contemplation of the district court at the time of the decree. In addition, the change is not temporary but permanent. We therefore affirm the alimony award in the amount of $1500 per month until David's retirement or Jennifer's age sixty-five, whichever shall last occur at which time the alimony will be $1500 per month less Jennifer's social security payments until Jennifer's death, David's death, or Jennifer's remarriage, whichever shall first occur. This alimony contingency differs from that in the district court ruling. However, it is what Jennifer suggested in her district court proposed findings, which we think is appropriate.

## VII. Future Child Support.

The district court's award of child support in the amount of $1465 per month is based on David's average yearly income from 1998–2000, which includes his non-W–2 income consisting of interest and dividend income, capital gains distributions, and other income. We have already concluded that David's non-W–2 income cannot be considered in determining David's child support obligation. The proper amount of child support must be based, according to the decree, on David's W–2 income and on Jennifer's W–2 income. We remand for recalculation of David's child support obligation consistent with this determination. In deciding how to handle the alimony award in calculating the child support obligation, the parties and the district court should consider our discussion on this issue in *In re Marriage of Lalone*, 469 N.W.2d 695, 696–97 (Iowa 1991).

## VIII. Child Support During the Appeal.

David contends the district court erred by increasing child support during the appeal to $1824 per month. The court of appeals did not address this issue.

Following the post-trial motion, Jennifer sought interim support (either some alimony or an increased amount of child sup-

port) because David had quit paying alimony due to his intention to appeal. Because he was not paying alimony, Jennifer alleged she was unable to meet family expenses on the child support David was paying. David then filed a notice of appeal and later a supersedeas bond to stay the child support and alimony. David resisted the motion for interim support contending as he does now that the appeal deprived the district court of jurisdiction and the bond stayed execution on the judgment.

▮ The general rule is that a perfected appeal deprives the district court of jurisdiction. *IBP, Inc. v. Al–Gharib,* 604 N.W.2d 621, 628 (Iowa 2000). However, in this case, the district court certainly had jurisdiction to address the motion because it involved a collateral matter. *See In re Estate of Tollefsrud,* 275 N.W.2d 412, 418 (Iowa 1979) (concluding district court properly entertained surviving spouse's request for support allowance while appeal was pending). In *In re Marriage of Spiegel,* this court held that a party should have the benefit of a supersedeas bond unless the party seeking temporary support shows a need for the support. 553 N.W.2d 309, 321 (Iowa 1996).

Here, Jennifer proved to the satisfaction of the district court a need for the increased support to pay family expenses. Because we find no error on this issue, we affirm the district court's interim order.

## IX. Attorney Fees.

As mentioned, the district court awarded Jennifer trial court attorney fees in the amount of $12,000, which the court of appeals affirmed. The court of appeals did not address Jennifer's request for appellate attorney fees. In her resistance to David's application for further review, Jennifer did request that she be awarded appellate attorney fees.

▮ David challenges the award of trial attorney fees. He contends that in modification proceedings the court may award attorney fees to the prevailing party pursuant to Iowa Code section 598.36 (2001). He argues that if Jennifer is unsuccessful on appeal in her application to modify alimony, then she is not entitled to attorney fees. And if she is successful, he asserts the fees awarded by the trial court are excessive. As to the application to enforce the decree for child support, David contends the statute does not allow attorney fees.

▮ Generally, a party has no claim for attorney fees in the absence of a statutory or a contractual provision allowing such an award. *Williams v. Van Sickel,* 659 N.W.2d 572, 579 (Iowa 2003). Iowa Code section 598.36 provides: "In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the *prevailing party* in an amount deemed reasonable by the court." (Emphasis added.) Thus, as David concedes, this provision does permit the district court discretion to compensate the prevailing party in modification proceedings for attorney fees. *In re Marriage of Guyer,* 522 N.W.2d 818, 822 (Iowa 1994). Because Jennifer was successful as to her application to modify the dissolution decree to extend the alimony, she is entitled to trial and appellate attorney fees.

▮ Her application to enforce child support, however, was not an application to modify but more akin to an order to show cause or contempt under the provisions of Iowa Code section 598.24. That provision pertinently provides:

When an action for a modification, order to show cause, or contempt of a dissolution ... decree is brought on the grounds that a party to the decree is in default or contempt of the decree, and the court determines that the party is in

default or contempt of the decree, the costs of the proceeding, including reasonable *attorney fees,* may be taxed against that party.

Iowa Code § 598.24 (emphasis added). Because we have found that David was not in default on his child support, Jennifer is not entitled to trial and appellate attorney fees for the time and effort spent on the application to enforce child support.

For these reasons, we must reverse the district court's award of attorney fees and vacate the court of appeals decision on this issue. We remand for the district court to determine what amount of trial and appellate attorney fees should be awarded to Jennifer consistent with our discussion here.

## X. Disposition.

In sum, we conclude as follows. The district court and the court of appeals erred in (1) finding that David was in arrears on child support payments and (2) computing his future child support based on trust and other non–W–2 income. Accordingly, we vacate the court of appeals decision and reverse the district court judgment on these issues.

The district court and the court of appeals correctly determined that the decree should be modified by allowing alimony beyond November 1, 2001, in the amount of $1500 per month. Accordingly, we affirm the court of appeals decision and the district court judgment on this issue.

However, we modify the alimony award by adopting the contingency suggested by Jennifer.

Apart from these rulings by the district court and the court of appeals, we reject David's request that he be awarded a credit on future child support for any alleged overpayments of child support.

On remand, the district court shall recalculate future child support according to the terms of the decree and based only on David's W–2 income and Jennifer's W–2 income.

Finally, we reverse the district court's award of attorney fees and vacate the court of appeals decision on this issue. We remand for the district court to determine what amount of trial and appellate attorney fees should be awarded to Jennifer on the application for modification to extend alimony.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AS MODIFIED AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AS MODIFIED, REVERSED IN PART, AND CASE REMANDED WITH DIRECTIONS.**