IN THE SUPREME COURT OF IOWA

 No. 147 / 04-1182

 Filed January 20, 2006

WANDA JEAN SPIKER and
JAMES LEE SPIKER,

 Appellants,

vs.

SHERRY LYNN SPIKER and
KELLY KEITH SPIKER,

 Appellees.
________________________________________________________________________
 Appeal from the Iowa District Court for Clay County, Frank Nelson,
Judge.

 Grandparents appeal from district court judgment vacating grandparent
visitation order pursuant to mother’s petition. AFFIRMED AND REMANDED.

 Scot L. Bauermeister of Fitzgibbons Law Firm, Estherville, for
appellants.

 Michael J. Houchins of Zenor, Houchins & Borth, Spencer, for
appellees.

CADY, Justice.
 The issue in this case is whether a custodial parent can modify a
grandparent visitation order on the ground that the applicable provision of
the grandparent visitation statute, upon which the order was based, was
subsequently found unconstitutional. The district court determined the
visitation order was subject to modification, and it terminated the
visitation. We agree and affirm the judgment of the district court.
 I. Background Facts and Proceedings
 Jim and Wanda Spiker are the grandparents of Paige and James Spiker.
Paige and James are the children of Kelly Spiker, Wanda and James’s son,
and Sherry Spiker. Sherry and Kelly were divorced on August 16, 1999.
Sherry was designated the primary physical caretaker of the children, and
Kelly was allowed visitation.
 On February 5, 2001, Wanda and Jim filed a petition for grandparent
visitation under Iowa Code section 598.35 (2001). They filed the petition
after Kelly stopped visiting the children in January 2000, and Sherry
stopped allowing the children to visit them. On August 21, in the course
of the litigation, Wanda, Jim, and Sherry entered into a stipulation
agreement providing that Wanda and Jim would be allowed visitation with the
children and that they would provide transportation of the children to and
from visits. However, they could not agree as to the length or time of the
visitation, so they left that issue for the court to decide. Following a
hearing, the court granted Wanda and Jim visitation with the children on
the first weekend of every month beginning September 2001. Sherry did not
appeal.
 Visitation occurred as ordered for almost a year when Sherry began
withholding Paige from visits. By 2004, Sherry refused to allow Wanda and
Jim to visit either Paige or James.
 On February 19, 2004, Wanda and Jim initiated contempt proceedings
against Sherry for refusing to allow visitation with the children. The
court entered an order for Sherry to show cause why she should not be held
in contempt. Sherry responded that her refusal to allow visitation was
“due to good cause for the children’s best interest.” She also asserted
that the grandparent visitation statute was unconstitutional and that
enforcement of the visitation order would violate her due process rights.
 The court held a hearing on the issue of Sherry’s contempt on March
22, 2004. It issued an order on March 25 finding Sherry in contempt of
court. The court reasoned that Sherry should have challenged the
constitutionality of the visitation order at or before trial, not as a
defense in contempt proceedings. See Walker v. City of Birmingham, 388
U.S. 307, 317-21, 87 S. Ct. 1824, 1830-32, 18 L. Ed. 2d 1210, 1217-
20 (1967) (holding the way to challenge an unconstitutional ordinance and
injunction issued under it was to apply to have injunction modified or
dissolved, not to violate the injunction and assert its unconstitutionality
as a defense in contempt proceedings; stating “respect for judicial process
is a small price to pay for the civilizing hand of law, which alone can
give abiding meaning to constitutional freedom”). Instead of sentencing
Sherry to jail time for contempt, the court awarded Wanda and Jim an
additional seven days of visitation with the children in June 2004. See
Iowa Code § 598.23(2)(b) (“The court may, as an alternative to punishment
for contempt, make an order which . . . [m]odifies visitation to compensate
for lost visitation time . . . .”).
 Sherry filed a motion to enlarge or amend under rule 1.904(2), again
arguing that enforcement of the visitation order would violate her due
process right to raise her children without undue interference by the
State. She contended that the order could not be enforced absent a finding
that she was an unfit mother. She further argued that the stipulation
agreement she entered into with Wanda and Jim was unenforceable and did not
validly waive her constitutional rights. The court denied the motion.
Sherry did not appeal.
 On April 27, 2004, Sherry filed a petition to modify, vacate, or stay
the visitation order, again arguing that the decree was unconstitutional.
After Wanda and Jim filed their answer, Sherry moved for summary judgment,
and Wanda and Jim resisted. On June 29, 2004, the court granted Sherry’s
motion for summary judgment and vacated the visitation order. Wanda and
Jim appeal.
 II. Standards of Review
 “[C]hallenges to Iowa’s grandparent visitation statute raise
‘questions of substantive due process and liberty interests in the context
of statutory interpretation’ obliging us ‘to review the record de novo,
making our own evaluation of the totality of the circumstances.’” In re
Marriage of Howard, 661 N.W.2d 183, 187 (Iowa 2003) (quoting Santi v.
Santi, 633 N.W.2d 312, 316 (Iowa 2001)). “Substantive due process
‘“provides heightened protection against government interference with
certain fundamental rights and liberty interests.”’” Sanchez v. State, 692
N.W.2d 812, 819 (Iowa 2005) (quoting Troxel v. Granville, 530 U.S. 57, 65,
120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49, 56 (2000)). We apply strict
scrutiny when a fundamental liberty interest is at issue. Id. at 819-20
(citing Reno v. Flores, 507 U.S. 292, 302, 113 S. Ct. 1439, 1447, 123
L. Ed. 2d 1, 16 (1993)). We have held that “the parental caretaking
interest,” or the right to direct the upbringing of one’s children, is
fundamental. Id. (citing Santi, 633 N.W.2d at 317). Therefore, state
action infringing on that interest must be narrowly tailored to serve a
compelling state interest. Id. (citing Santi, 633 N.W.2d at 318). We have
already held that the provision of the grandparent visitation statute at
issue in this case, section 598.35(1), is not narrowly tailored to serve a
compelling state interest and is unconstitutional on its face. In re
Marriage of Howard, 661 N.W.2d 183, 185, 192 (Iowa 2003). The only
question is whether this holding allows Sherry to modify a grandparent
visitation order from which she did not appeal.
 III. Discussion
 A. Res Judicata
 Wanda and Jim first argue that Sherry is barred from challenging the
constitutionality of the visitation order under the doctrine of res
judicata.[1] They claim Sherry should have appealed the August 21, 2001
decree granting visitation if she wanted to challenge it as
unconstitutional. This argument is supported by several general principles
governing res judicata, and was recently adopted by the Arkansas Supreme
Court in Hunt v. Perry, 138 S.W.3d 656 (Ark. 2003).
 In Hunt v. Perry, a grandmother sought visitation of her
grandchildren from their father, her former son-in-law. Hunt, 138 S.W.3d
at 657. The father argued the Arkansas Grandparent Visitation Act was
unconstitutional, relying on the Supreme Court’s Troxel decision. Id. at
658. The district court found the statute was constitutional and granted
the grandmother visitation. Id. The father did not appeal this order.
Id. A short time later, the Arkansas Supreme Court held the grandparent
visitation statute was unconstitutional, and the father sought to terminate
the grandmother’s visitation. Id. The district court held the father was
barred under res judicata from relitigating the constitutionality of the
statute. Id. at 659. On appeal, the supreme court agreed:

 [T]he fact that he failed to pursue an appeal now prevents him from
 challenging the trial court’s previous order finding the statute
 constitutional. In sum, because we have a case that involves the same
 parties, the same issue, and has already been decided by a court of
 competent jurisdiction, the doctrine of res judicata is applicable.

Id. at 662; see also Ingram v. Knippers, 72 P.3d 17, 21-22 (Okla. 2003)
(holding mother could not relitigate constitutionality of grandparent
visitation statute in action to terminate visitation order when she could
have, but did not, raise the issue in an appeal of the initial order). But
see In re T.J.K., 62 S.W.3d 830, 832 (Tex. Ct. App. 2001) (“If Troxel truly
does make [the grandparent visitation statute] unconstitutional, then
maintaining an order granting grandparent access would be inappropriate
because it would violate [the parent’s] Fourteenth Amendment rights under
the United States Constitution. The order granting grandparent visitation
is subject to modification by the trial court.”).
 In deciding whether to follow this holding, we must determine whether
the Hunt decision is consistent with our prior law concerning res judicata.
 See Handeland v. Brown, 216 N.W.2d 574, 577 (Iowa 1974) (“[W]e have no
obligation to adopt a rule just because it has generally been adopted
elsewhere. Although cases from other states may be persuasive authority,
they have no greater cogency than the reasoning by which they were
decided.”). We therefore turn to consider that body of law.
 “The doctrine of res judicata embraces the concepts of claim
preclusion and issue preclusion.” Colvin v. Story County Bd. of Review,
653 N.W.2d 345, 348 (Iowa 2002) (citing Bennett v. MC No. 619, Inc., 586
N.W.2d 512, 516 (Iowa 1998)); accord 18 Charles Alan Wright et al., Federal
Practice and Procedure § 4402, at 7 (2d ed. 2002) [hereinafter Wright].
Wanda and Jim must necessarily rely on claim preclusion in this case,
rather than issue preclusion, because issue preclusion requires the issue
to have been actually litigated, and the constitutionality of the
grandparent visitation statute was not actually litigated before the
initial visitation order was entered. See Restatement (Second) Judgments §
27, at 250 (1982) (“When an issue of fact or law is actually litigated and
determined by a valid and final judgment, and the determination is
essential to the judgment, the determination is conclusive in a subsequent
action between the parties, whether on the same or a different claim.”
(Emphasis added.)).
 Our law concerning claim preclusion is well established:

 The general rule of claim preclusion provides a valid and final
 judgment on a claim precludes a second action on that claim or any
 part of it. The rule applies not only as to every matter which was
 offered and received to sustain or defeat the claim or demand, but
 also as to any other admissible matter which could have been offered
 for that purpose. Claim preclusion, as opposed to issue preclusion,
 may foreclose litigation of matters that have never been litigated.
 It does not, however, apply unless the party against whom preclusion
 is asserted had a “full and fair opportunity” to litigate the claim or
 issue in the first action. A second claim is likely to be barred by
 claim preclusion where the “acts complained of, and the recovery
 demanded are the same or where the same evidence will support both
 actions.” A plaintiff is not entitled to a second day in court by
 alleging a new ground of recovery for the same wrong.

Arnevik v. Univ. of Minn. Bd. of Regents, 642 N.W.2d 315, 319 (Iowa 2002)
(citations omitted; emphasis added). Thus, the party seeking to invoke the
doctrine of claim preclusion must establish three elements: (1) “the
parties in the first and second action were the same;” (2) “the claim in
the second suit could have been fully and fairly adjudicated in the prior
case;” and (3) “there was a final judgment on the merits in the first
action.” Id.; accord 18 Wright § 4405, at 83.
 The first element of claim preclusion is beyond dispute. Clearly,
the parties in the first action (Wanda and Jim’s petition for grandparent
visitation) and in the second action (Sherry’s petition to modify, vacate,
or stay the visitation order) are the same.
 The second element is also fairly straightforward. Again, the issue
is whether Sherry could have attacked the constitutionality of the
grandparent visitation statute in the first action. See Arnevik, 642
N.W.2d at 319 (listing second element as “the claim in the second suit
could have been fully and fairly adjudicated in the prior case”). The
general rule is that “[w]hen a valid and final personal judgment is
rendered in favor of the plaintiff, . . . the defendant cannot avail
himself of the defenses he might have interposed, or did interpose, in the
first action,” in a subsequent action. Restatement (Second) of Judgments §
18, at 151-52; see In re Estate of Boyd, 634 N.W.2d 630, 637-38 (Iowa 2001)
(when party did not raise defense to claim, final judgment was issued, and
party did not appeal, party could not collaterally attack the judgment);
Robbins v. Daniel, 226 Iowa 678, 690, 284 N.W. 793, 798 (1939) (when party
did not assert affirmative defense, res judicata barred raising the issue
in later suit); see also Shin v. Portals Confederation Corp., 728 A.2d 615,
619 (D.C. 1999) (where party could have raised fraudulent misrepresentation
as defense in first action, he could not bring a later action for
fraudulent misrepresentation because of res judicata); J.C. v. Adoption of
Minor Child Named Herein, 797 So. 2d 209, 212 (Miss. 2001) (“‘[T]he
doctrine of res judicata bars litigation in a second lawsuit on the same
cause of action “of all grounds for, or defenses to, recovery that were
available to the parties [in the first action], regardless of whether they
were asserted or determined in the prior proceeding.”’” (quoting Key v.
Wise, 629 F.2d 1049, 1063 (5th Cir. 1980)) (emphasis added)); Ingersoll-
Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 207 (Tex. 1999) (res
judicata bars “claims or defenses that, through diligence, should have been
litigated in the prior suit but were not” (emphasis added)). Sherry points
to no reason, and we can conceive of none, why she could not have
challenged the constitutionality of our grandparent visitation statute when
Wanda and Jim initially sought visitation under it. The constitutionality
of the statute could have been fairly and fully litigated in that action.
Arnevik, 642 N.W.2d at 319.
 The final element of claim preclusion is that “there was a final
judgment on the merits in the first action.” Id.; see also Restatement
(Second) of Judgments § 13, at 132 (“The rules of res judicata are
applicable only when a final judgment is rendered.”). Whether the initial
visitation order was a “final” judgment is the fighting issue in this case.
 Sherry contends that res judicata does not apply to orders concerning
custody and visitation and that the court always has jurisdiction to modify
such a decree.
 There is no specific statutory authority for courts to modify
grandparent visitation decrees. See Iowa Code § 598.35; id. § 598.41; see
also id. § 600B.31 (stating courts in paternity actions have continuing
jurisdiction in paternity actions “to determine the custody in accordance
with the best interests of the child”). Nevertheless, the initial
grandparent visitation order in this case was a judgment granting
continuing relief. See Restatement (Second) of Judgments § 13 cmt. c, at
133 (“A judgment concluding an action is not deprived of finality for
purposes of res judicata by reason of the fact that it grants or denies
continuing relief, that is, requires the defendant, or holds that the
defendant may not be required, to perform acts over a period of time.
Judgments of these types are rendered typically in actions for . . . child
support and custody.”). When judgments concerning continuing relief are
involved and

 a change of circumstances makes the judgment too burdensome or
 otherwise inapposite as a regulation of ongoing conduct, it is
 ordinarily possible for the party concerned to apply to the rendering
 court for a modification of the terms of the judgment.

Restatement (Second) of Judgments § 13 cmt. c, at 133; see also id. § 73,
at 197 (“Subject to the limitations stated in § 74, a judgment may be set
aside or modified if: (1) The judgment was subject to modification by its
own terms or by applicable law, and events have occurred subsequent to the
judgment that warrant modification of the contemplated kind; or (2) There
has been such a substantial change in the circumstances that giving
continued effect to the judgment is unjust.”); cf. In re Marriage of
McCurnin, 681 N.W.2d 322, 329 (Iowa 2004) (stating divorce decree setting
child support obligation, which parties did not appeal, was res judicata
“until a modification changed its provisions” (citing In re Bisenius, 573
N.W.2d 258, 260 (Iowa 1998))); Iowa Code § 598.21(8) (requiring a
“substantial change in circumstances” to modify orders under section
598.21).[2] But see Restatement (Second) of Judgments § 74, at 202
(“Except with regard to judgments referred to in §§ 65-66 [invalid default
judgments] and 69 [lack of subject matter jurisdiction], relief from a
judgment will be denied if: (1) The person seeking relief failed to
exercise reasonable diligence in discovering the ground for relief, or
after such discovery was unreasonably dilatory in seeking relief; or (2)
The application for relief is barred by lapse of time; or (3) Granting the
relief will inequitably disturb an interest of reliance on the judgment.
When such an interest can be adequately protected by giving the applicant
limited or conditional relief, the relief will be shaped accordingly.”).
This is consistent with our general view that courts have inherent
authority to modify decrees concerning custody and visitation of children
based on a substantial change in circumstances. See Hobson v. Hobson, 248
N.W.2d 137, 139-40 (Iowa 1976).
 In order to determine whether an order granting continuing relief has
preclusive effect in a later action (i.e., is a “final judgment” for res
judicata purposes), we ask “whether the issues in the two actions are
materially different because of events which occurred in the interim, in
which case preclusion is to be denied.” Restatement (Second) of Judgments
§ 13 cmt. c, at 134. In other words, the first judgment does not have a
preclusive effect in the second action if circumstances have changed
sufficiently to warrant modifying the decree. Wade v. Hirschman, 903 So.
2d 928, 933 (Fla. 2005) (“To modify such judgments, the trial court must
decide whether there is a ‘factual basis sufficient to show that conditions
have become materially altered since the entry of the previous decree.’
The degree of change in the conditions and circumstances since the date of
the previous decree must be of a substantial character.” (Citations
omitted.)); In re Marriage of McCurnin, 681 N.W.2d at 329 (“Jennifer did
not appeal following the entry of the decree. The decree was therefore res
judicata as to what was to be considered in calculating David’s child
support obligation until a modification changed its provisions.” (Citation
omitted.)). This relaxation of the res judicata standard in child custody
cases is required because our goal in such cases is always to serve the
best interests of the child, which may require court supervision and
modification throughout the child’s minority. See In re Marriage of Ford,
563 N.W.2d 629, 631 (Iowa 1997) (primary consideration in child custody
cases is the best interests of the children (citing In re Marriage of
Kleist, 538 N.W.2d 273, 276 (Iowa 1995); In re Guardianship of Knell, 537
N.W.2d 778, 780 (Iowa 1995))); accord Linder v. Linder, 72 S.W.3d 841,
850 (Ark. 2002) (“[C]ustody orders are subject to modification in order to
respond to changed circumstances and the best interest of the child.”).
This standard mirrors the general standard for modification of custody
provisions of a dissolution decree. See Hobson, 248 N.W.2d at 139-40.
 Ultimately then, the case turns on whether Sherry established a
substantial change in circumstances warranting modification of the initial
grandparent visitation order. In her petition to modify, the only change
in circumstances Sherry alleged was that we had held some provisions of the
grandparent visitation statute unconstitutional in recent years. See
Lamberts v. Lillig, 670 N.W.2d 129, 132 (Iowa 2003) (section 598.35(3)); In
re Marriage of Howard, 661 N.W.2d at 185 (section 598.35(1)); Santi, 633
N.W.2d at 314 (section 598.35(7)). We must determine whether this is a
sufficient change in circumstances.
 We have held that “[t]he res judicata consequences of a final
unappealed judgment are not altered by the fact that the judgment may have
rested on incorrect legal principles.” In re Bisenius, 573 N.W.2d at 260
(citing Gail v. W. Convenience Stores, 434 N.W.2d 862, 863 (Iowa 1989);
Mahaffa v. Mahaffa, 230 Iowa 679, 683-84, 298 N.W. 916, 919 (1941)).
However, we have also held that a change in the law occurring after the
original judgment constituted a substantial change in circumstances
justifying modification. See In re Marriage of Feustel, 467 N.W.2d 261,
265 (Iowa 1991) (holding change in federal tax law under which father was
no longer allowed to claim children as dependents constituted substantial
change in circumstances). The Restatement also contains conflicting
statements on the issue. On one hand, it says it would be “a very unsound
policy” to deny preclusion when “a subsequent judicial decision changes the
law that was applied in reaching an earlier judgment.” Restatement
(Second) of Judgments § 73 cmt. c, illus. 4, at 200. “On the other hand,”
says the Restatement, “when a change of law occurs following a judgment
regulating future conduct, that may be a circumstance justifying relief
from the judgment.” Id. Moreover, the general Restatement rule states
that a change in the law would not prevent the application of res judicata.
 See Restatement (Second) of Judgments § 18 cmt. b, at 153 (“The fact that
the judgment was based on error does not preclude the defendant from
setting the judgment up as a defense to an action on the original claim.
If it was erroneous, the plaintiff might have taken steps to have it set
aside or reversed in the original proceeding.”). However, there is an
exception to the general rule. Restatement (Second) of Judgments § 26(1),
at 233-34. Claim preclusion does not apply when “[t]he judgment in the
first action was plainly inconsistent with the fair and equitable
implementation of a statutory or constitutional scheme, or it is the sense
of the scheme that the plaintiff should be allowed to split her claims.”
Id. § 26(1)(d), at 234 & cmt. e, illus. 6, at 240. That is,

 the general principal that changes of law do not defeat claim
 preclusion may be relaxed when the dispute involves matters of special
 sensitivity. The easiest illustrations are provided by development of
 constitutional principles in cases that challenge continuing conduct
 of broad public importance. . . . A few cases reject preclusion in
 face of evolving constitutional law principles although the public
 interest may not seem as vital or the interests involved seem more
 nearly personal than public. These decisions are justified by many
 factors. The rights involved may be of public importance at an
 abstract level, despite the lack of obvious immediate importance.
 Often the first actions were eligible for preclusion only on
 principles of representation; special care is always required to
 ensure that nonparties are properly bound in such cases. Finally,
 ordinary claim preclusion rules are often strained by continuing
 conduct.

18 Wright § 4415, at 372-73.
 The United States Supreme Court has dealt with the issue in the
context of a statutory change occurring after the original judgment. In
System Federation No. 91 v. Wright, 364 U.S. 642, 81 S. Ct. 368, 5
L. Ed. 2d 349 (1961), a group of nonunion employees entered into a consent
decree with a railroad and a number of unions representing its employees
enjoining the railroad and its unions from discriminating against nonunion
employees (i.e., requiring a “union shop”). Sys. Fed’n No. 91, 364 U.S. at
644, 81 S. Ct. at 369, 5 L. Ed. 2d at 351. Afterwards, Congress amended
the Railway Labor Act “to permit, under certain circumstances, a contract
requiring a union shop.” Id. at 644, 81 S. Ct. at 369-70, 5 L. Ed. 2d at
352. The railroad and the unions then sought to modify the decree’s
injunction to reflect this change in the law. Id. at 644, 81 S. Ct. at
370, 5 L. Ed. 2d at 352. In commenting on the res judicata effect of the
original decree, the Court said:

 There is also no dispute but that a sound judicial discretion may call
 for the modification of the terms of an injunctive decree if the
 circumstances, whether of law or fact, obtaining at the time of its
 issuance have changed, or new ones have since arisen. The source of
 the power to modify is of course the fact that an injunction often
 requires continuing supervision by the issuing court and always a
 continuing willingness to apply its powers and processes on behalf of
 the party who obtained that equitable relief. Firmness and stability
 must no doubt be attributed to continuing injunctive relief based on
 adjudicated facts and law, and neither the plaintiff nor the court
 should be subjected to the unnecessary burden of re-establishing what
 has once been decided. Nevertheless the court cannot be required to
 disregard significant changes in law or facts if it is “satisfied that
 what it has been doing has been turned through changing circumstances
 into an instrument of wrong.” A balance must thus be struck between
 the policies of res judicata and the right of the court to apply
 modified measures to changed circumstances.

Id. at 647-48, 81 S. Ct. at 371, 5 L. Ed. 2d at 353 (citation omitted;
emphasis added); see also United States v. Swift & Co., 286 U.S. 106, 114,
52 S. Ct. 460, 462, 76 L. Ed. 999, 1005-06 (1932) (“The distinction is
between restraints that give protection to rights fully accrued upon facts
so nearly permanent as to be substantially impervious to change, and those
that involve the supervision of changing conduct or conditions and are thus
provisional and tentative.” (Citation omitted.)). The Court ultimately
concluded that the decree could be modified due to the change in the law.
Sys. Fed’n No. 91, 364 U.S. at 652, 81 S. Ct. at 373, 5 L. Ed. 2d at 355.
The Court explained that “[t]he parties have no power to require of the
court continuing enforcement of rights the statute no longer gives.” Id.
 This principle applies with equal, if not greater, force to the
visitation order at issue in this case. If the visitation order has turned
into “an instrument of wrong,” Sys. Fed’n No. 91, 364 U.S. at 647, 81
S. Ct. at 371, 5 L. Ed. 2d at 353, a court should have the power to modify
it, particularly because its enforcement is violating Sherry’s fundamental
constitutional right to direct the upbringing of her children, rather than
a mere statutory right. Likewise, Wanda and Jim “have no power to require
of the court continuing enforcement of rights the [grandparent visitation]
statute no longer gives.” Id. at 652, 81 S. Ct. at 373, 5 L. Ed. 2d at
355.
 In sum, the fact that the statute upon which the visitation order was
based has been declared unconstitutional is a substantial change in
circumstances. Yet, in the context of child custody cases, we have also
required the change to “relate to the welfare of the children.” In re
Marriage of Frederici, 338 N.W.2d 156, 158 (Iowa 1983) (citing In re
Marriage of Mikelson, 299 N.W.2d 670, 671 (Iowa 1980)). The district court
did not discuss whether Paige and James’ best interests were better served
by discontinuing the visitation with their grandparents. However, there is
a presumption that parents act in the best interests of their children.
See In re Marriage of Howard, 661 N.W.2d at 188 (citing Troxel, 350 U.S. at
69-70, 120 S. Ct. at 2062, 147 L. Ed. 2d at 58-59). Thus, the change in
circumstances in this case (the newly recognized unconstitutionality of
section 598.35(1)) “relate[s] to the welfare of the children,” In re
Marriage of Frederici, 338 N.W.2d at 158, because it recognizes Sherry’s
fitness as a parent to make decisions in the best interests of her
children, absent a showing that she is unfit or would harm the children,
and it returns this decisionmaking role to her rather than the State.
 Although res judicata is founded on important policy considerations,
those considerations must give way at least when, as in this case, claim
preclusion would result in the State’s continuing violation of an
individual’s fundamental constitutional rights. As previously noted, the
Arkansas Supreme Court rejected this conclusion in Hunt v. Perry, holding
that “a change in circumstances that prevents the application of res
judicata is a change in the circumstances of the parties, not the law.”
Hunt, 138 S.W.3d at 662. However, we have already held that a change in
the law can constitute a change in circumstances for purposes of
modification. See In re Marriage of Feustel, 467 N.W.2d at 265 (holding
change in federal tax law under which father was no longer allowed to claim
children as dependents constituted substantial change in circumstances).
As the Texas Court of Appeals stated in In re T.J.K.,

 If a statute that authorized a term or condition of visitation is
 declared unconstitutional, that change should operate like any other
 change in circumstances that potentially makes the order unworkable or
 inappropriate. There is nothing in the statute that limits the change
 in circumstances to factual changes rather than changes in law.

In re T.J.K., 62 S.W.3d at 832; cf. Iowa Code § 598.21(8)(k) (listing as a
factor to be considered in determining whether there is a substantial
change in circumstances “[o]ther factors the court determines to be
relevant in an individual case”). We find the Texas court’s reasoning to
be more consistent with our law concerning res judicata than the court’s
reasoning in Hunt. Therefore, we conclude the district court was correct
that res judicata did not bar Sherry’s petition to modify. The court also
correctly concluded that the unconstitutionality of section 598.35(1), as
pronounced in In re Marriage of Howard, was a substantial change in
circumstances that justified terminating the grandparent visitation order.
 B. Other Arguments
 Wanda and Jim next argue that even if section 598.35(1), upon which
the visitation order is based, would normally be unconstitutional, it is
constitutional as applied in this case because Sherry stipulated to the
visitation. Wanda and Jim argue Sherry’s stipulation to visitation was
“tantamount to a consent decree.” In re Marriage of Ask, 551 N.W.2d at
645 (citation omitted).
 This argument does not alter our res judicata analysis. The judgment
in System Federation No. 91 was also a consent decree. Sys. Fed’n No. 91,
364 U.S. at 644, 81 S. Ct. at 369, 5 L. Ed. 2d at 351. The Court
explained:

 “The result is all one whether the decree has been entered after
 litigation or by consent. In either event, a court does not abdicate
 its power to revoke or modify its mandate, if satisfied that what it
 has been doing has been turned through changing circumstances into an
 instrument of wrong. We reject the argument for the interven[o]rs
 that a decree entered upon consent is to be treated as a contract and
 not as a judicial act. . . . But in truth what was then adjudged was
 not a contract as to [anyone]. The consent is to be read as directed
 toward events as they then were. It was not an abandonment of the
 right to exact revision in the future, if revision should become
 necessary in adaptation to events to be.”

Id. at 650-51, 81 S. Ct. at 373, 5 L. Ed. 2d at 355 (quoting Swift & Co.,
286 U.S. at 114-15, 52 S. Ct. at 462, 76 L. Ed. at 1006)). Thus, the fact
that the visitation order was based on a stipulation does not mean the
court cannot modify it if circumstances change. We have said:

 [U]nder our decisions the binding force of a stipulation as to
 alimony, child support and custody depends on the approval of the
 court. It is the decree and not the contract that becomes binding.
 The stipulation becomes merged in the decree. And the court may
 disregard the stipulation entirely.

Brin v. Brin, 240 Iowa 659, 664, 37 N.W.2d 261, 264 (1949) (citations
omitted); see also Holland v. Holland, 260 Iowa 248, 250, 149 N.W.2d 124,
125 (1967) (“The fact the parties made an agreement for support of children
and the court approved it in the original decree does not affect the power
to modify the decree.” (Citations omitted.)); 24A Am. Jur. 2d Divorce and
Separation § 999, at 383-84 (1998) (“The fact that the parties made an
agreement for the custody and support of children and that the court
approved it in the original decree does not affect the power to modify the
decree.”); cf. id. § 817, at 197 (“Where a court has the general power to
modify a decree for alimony or support, the exercise of that power normally
is not affected by the fact the decree refers to, or is based on, an
agreement of the parties.”).
 We also observe that this approach is consistent with our general
approach in Lynch v. Uhlenhopp, 248 Iowa 68, 83, 78 N.W.2d 491, 500 (1956),
where we refused to permit contempt powers of courts to be used to enforce
a stipulated provision of a dissolution decree that required the custodial
parent to raise the child of the parties “in the Roman Catholic Religion.”
Instead, we found that such a provision in a dissolution decree interfered
with the constitutional restrictions forbidding interference with
individual religious beliefs, and we refused to permit the courts to be
used to affirmatively enforce the provision. Lynch, 248 Iowa at 83, 78
N.W.2d at 500. Accordingly, we reject Wanda and Jim’s contractual
argument. We also note that we need not consider Sherry’s argument that
she did not “‘voluntar[il]y, knowingly and intelligently,’” Lamberts, 670
N.W.2d at 135 (citation omitted), waive her parental caretaking interest in
the visitation stipulation with Wanda and Jim. Even if she had validly
waived her interest, the district court was still empowered to modify the
decree upon a substantial change in circumstances.
 Moreover, we also reject Wanda and Jim’s constitutional-as-applied
argument because we have already held section 598.35(1) is unconstitutional
on its face. In re Marriage of Howard, 661 N.W.2d at 192. If a statute is
unconstitutional on its face, by definition, it cannot be constitutional as
applied because a finding that a statute is unconstitutional on its face
means that it cannot be constitutionally applied under any conceivable set
of circumstances. In re Lewis, 257 N.W.2d 505, 510 (Iowa 1977) (“‘A
statute is not unconstitutional on its face unless it is unconstitutional
in every conceivable state of facts; it is ordinarily not unconstitutional
as applied unless it is unconstitutional as applied in the specific factual
situation before the court.’” (Citation omitted.)); accord 3 Chester J.
Antieau & William J. Rich, Modern Constitutional Law § 50.03, at 711 (1997)
(stating a holding that a statute is unconstitutional on its face is a
determination that the legislation is always unconstitutional in “‘every
conceivable situation which might possibly arise’”).
 Finally, Wanda and Jim argue that the district court never had
jurisdiction to modify the visitation order because Sherry did not file her
petition within the time required by rule 1.1013, our rule governing
petitions to vacate or modify final judgments. This argument fails because
Sherry’s failure to comply with our rule governing modifications of final
judgments does not deprive the court of its common-law power to modify
judgments granting continuing relief and regulating future conduct upon a
substantial change in circumstances. See Restatement (Second) of Judgments
§ 73, at 197 (“[A] judgment may be set aside or modified if: . . . [t]here
has been such a substantial change in the circumstances that giving
continued effect to the judgment is unjust.”).
 C. Sherry’s Request for Appellate Attorney Fees
 The final issue in this appeal is Sherry’s request for appellate
attorney fees. An award of appellate attorney fees is within the
discretion of the appellate court. In re Marriage of Ask, 551 N.W.2d at
646 (citing In re Marriage of Gaer, 476 N.W.2d 324, 326 (Iowa 1991)).
Whether such an award is warranted is determined by considering “the needs
of the party making the request, the ability of the other party to pay, and
whether the party making the request was obligated to defend the trial
court’s decision on appeal.” Id. (citing In re Marriage of Gaer, 476
N.W.2d at 326). Because we do not have any evidence of the parties’
respective ability to pay, we remand the case to the district court to
determine Sherry’s entitlement to fees and the amount, if any, thereof.
See Schaffer v. Frank Moyer Constr., Inc., 628 N.W.2d 11, 23 (Iowa 2001)
(“[U]nder our current practice, the issue of appellate attorney fees is
‘frequently determined in the first instance in the district court because
of the necessity for making a record.’” (quoting Lehigh Clay Prods., Ltd.
v. Iowa Dep’t of Transp., 545 N.W.2d 526, 530 n.2 (Iowa 1996))); see also
Markey v. Carney, 705 N.W.2d 13, 27 (Iowa 2005) (remanding to district
court to determine appellate attorney fees); GreatAmerica Leasing Corp. v.
Cool Comfort Air Conditioning & Refrigeration, Inc., 691 N.W.2d 730, 734
(Iowa 2005) (same); In re Marriage of McCurnin, 681 N.W.2d at 333 (same).
 IV. Conclusion
 Res judicata does not bar Sherry’s petition to modify or vacate the
visitation order because the change in the law recognizing the
unconstitutionality of section 598.35(1) is a substantial change in
circumstances justifying modification of the order. “[G]iving continued
effect to the [visitation order] is unjust,” Restatement (Second) of
Judgments § 73(2), at 197, because it constitutes a continuing violation of
Sherry’s constitutional right as a mother to make decisions regarding her
children’s well-being absent a showing of harm to them or her unfitness.
The fact that the order was based on a stipulation of the parties does not
alter this result. The district court was therefore correct in vacating
the visitation order. We affirm the district court judgment and remand for
determination of Sherry’s request for appellate attorney fees.
 AFFIRMED AND REMANDED.
-----------------------
 [1] Both parties reference the “law of the case” doctrine, but that
doctrine is inapplicable. The law of the case doctrine says:

 [A]n appellate decision becomes the law of the case and is controlling
 on both the trial court and on any further appeals in the same case.
 Springer v. Weeks & Leo Co., 475 N.W.2d 630, 632 (Iowa 1991). Like
 res judicata, the law of the case doctrine is founded on a public
 policy against reopening matters which have been decided. Wolfe v.
 Graether, 389 N.W.2d 643, 651 (Iowa 1986) (citing 46 Am. Jur. 2d
 Judgments § 400, at 568 (1969)). Thus, issues decided by an appellate
 court generally cannot be reheard, reconsidered, or relitigated in the
 trial court. 5 C.J.S. Appeal and Error § 975, at 476-77 (1993). The
 appellate court decision is final as to all questions decided and the
 trial court is obligated to follow that decision. Id.

United Fire & Cas. Co. v. Iowa Dist. Ct., 612 N.W.2d 101, 103 (Iowa 2000);
accord In re Lone Tree Cmty. Sch. Dist., 159 N.W.2d 522, 526 (Iowa 1968).
However, this is the first time the Spikers’ case has been before any
appellate court, so it is clear the applicable doctrine is res judicata,
not law of the case.
 [2]In addition, Iowa Rule of Civil Procedure 1.1012 provides for
modification of judgments under certain circumstances listed in the rule.
See Iowa R. Civ. P. 1.1012 (grounds for modifying or vacating). However,
petitions for relief under that rule must be filed within one year of the
entry of the judgment or order involved. Id. r. 1.1013(1). Here, Sherry
did not file her petition to modify until April 27, 2004—two years and
eight months after the visitation order was filed on August 21, 2001.
Therefore, even assuming one of the grounds listed in rule 1.1012 applied
to Sherry, she could not modify the judgment under that rule.