**In re the MARRIAGE OF Mary R. MAHER and James W. Maher**

**Upon the Petition of**

**Mary R. Maher n/k/a Mary R. Beaves, Appellee,**

**And Concerning**

**James W. Maher, Appellant.**

**No. 97–1707.**

Supreme Court of Iowa.

July 8, 1999.

As Amended on Denial of Rehearing July 30, 1999.

Daniel L. Bray and Chad A. Kepros of Bray & Klockau, P.L.C., Iowa City, for appellant.

Steven E. Ballard of Leff, Haupert, Traw & Willman, L.L.P., Iowa City, for appellee.

LAVORATO, Justice.

James W. Maher appeals from a district court ruling that denied his application for child support modification and denied his request to reduce his obligation to provide post-high school education expenses for his three children. His former wife, Mary R. Beaves, cross-appeals from that portion of the ruling that (1) refused to enforce a cost-of-living (COLA) provision, and (2) modified the decree by requiring her to contribute one-half toward transportation expenses associated with James visitation with the children. She also contends the district court should have awarded her trial attorney fees and requests we award her appellate attorney fees. We affirm on the appeal and affirm in part and reverse in part on the cross-appeal.

## I. Background Facts and Proceedings.

James and Mary were married in June 1980. They have three children: Thomas, age 15; Robert, age 12; and Kathleen, age 8. All three children are in good health.

On June 9, 1993, the district court dissolved the marriage and entered a decree that incorporated a stipulation of the parties. The stipulation granted the parties joint custody and granted Mary physical care of the children. Under the stipulation, James received reasonable and liberal visitation privileges, including every Friday from 5:30 p.m. until Monday morning and mid-week overnight visitation.

The stipulation also provided that James pay (1) child support of $4500 per month, (2) alimony of $1000 per month, (3) car insurance expenses for the children, and (4) the costs of Kathleen's wedding. The stipulation contained a COLA provision that required James to pay increased child support by a percentage equal to a rise in the national consumer price index. The stipulation also required James to maintain a life insurance policy on his life for $1,215,000 with the children as beneficiaries to secure his child support obligation.

Additionally, the stipulation required James to "pay the costs of application fees, testing expenses or fees, interviewing fees, trips, and related transportation and lodg-

ing and food costs for said children when applying to colleges and universities, up to a maximum of $2000 per child." The stipulation also required James to "pay for room, board, tuition, books and supplies for the children for a four-year post-high school education ... limited to in-state student costs at the University of Iowa."

At the time of the dissolution, James was forty-five and Mary was thirty-nine. James was then and is presently a board-certified general surgeon and professor of surgery at the University of Iowa. His yearly gross income from the time of the decree ranged from $178,000 to $204,271. The district court found that his current net monthly income is $10,161. At the time of the dissolution, Mary was not working. At present, she is a registered nurse, working part-time. The district court found that she has a net monthly income of $1827.

About six weeks after the district court entered the dissolution decree, Mary moved to Pennsylvania. Thereafter, on September 20, 1993, the parties agreed to a modification of the decree on visitation. As part of the agreement, James agreed to pay all the transportation costs associated with his visitation rights.

In January 1994 James filed an application to terminate his alimony obligation. Under the stipulation, alimony would terminate in the event Mary cohabited with an adult. In March the parties reached an agreement terminating the alimony. The agreement also required Mary to pay back to James $2500 of the $6000 in alimony James had paid during the period of her cohabitation with an adult male, Steve Sweeney. Mary had intended to marry Sweeney but later decided not to.

Shortly after the divorce, James married Carol Staheli. Carol has been diagnosed with a stage 2 cancer. Carol works part-time as a nurse, earning $20,000 per year. In October 1994 Mary married Robert Beaves, an attorney who heads the department of finance and legal studies at Robert

Morris College. Robert has a net monthly income of $4704.

On June 20, 1997, James filed the present modification application. He asked the court to (1) reduce his child support obligation; (2) delete the COLA provision; (3) reduce his obligation to provide life insurance; and (4) reduce his obligation to pay for post-high school expenses, transportation expenses associated with child visitation, and uninsured medical expenses for the children.

The court refused to modify James' obligation to pay (1) child support, (2) post-high school education expenses, and (3) uninsured medical expenses for the children. The court, however, did modify James' obligation to pay transportation expenses associated with his visitation rights. It did so by ordering Mary to pay for the transportation costs of sending the children back to Pennsylvania following James' visitation with them. The court also reduced James' obligation to maintain life insurance on his life from $1,215,000 to $355,000. The court found the COLA provision vague and therefore unenforceable and refused to allow either party attorney fees.

As we consider the issues the parties have raised, we discuss additional facts relevant to those issues.

## II. Scope of Review.

■ Because this is an equity action, our review is de novo. Iowa R.App. P. 4. In our review, we examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). Although we give weight to the district court's factual findings, we are not bound by them. Iowa R.App. P. 14(f)(7).

■ A party seeking modification of a dissolution decree must establish by a preponderance of the evidence that there has been a substantial change in the circumstances of the parties since the entry of

the decree or of any subsequent intervening proceeding that considered the situation of the parties upon application for the same relief. *Mears v. Mears*, 213 N.W.2d 511, 514 (Iowa 1973). Other well-established principles govern modification: (1) not every change in circumstances is sufficient; (2) it must appear that the continued enforcement of the decree would, as a result of the changed circumstances, result in positive wrong or injustice; (3) the change in circumstances must be permanent or continuous rather than temporary; and (4) the change in circumstances must not have been within the contemplation of the district court when the original decree was entered. *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983). The district court has reasonable discretion in determining whether modification is warranted, and we will not disturb that discretion unless there is a failure to do equity. *Id.*

### III. Issues on Appeal.

**A. Child support.** Before the adoption of our child support guidelines, a court was required to consider certain statutory factors when fixing child support. *See* Iowa Code §§ 598.21(4), 598.21(8) (1987). With the adoption of guidelines, a court is no longer required to consider these statutory factors. *See In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). A court, however, may consider the statutory factors when "the guidelines require judicial discretion or if the guidelines award would be unjustified or inappropriate." *Id.*

The latest child support guidelines provide that, when the noncustodial parents net monthly income is $6001 or more, the amount awarded in child support rests within the sound discretion of the district court. *See* Iowa Child Support Guidelines (July 1, 1995). In no event, however, may the award be less than the guidelines amount for a noncustodial parent with a net monthly income of $6000. *See id.* Therefore, James' $10,161 net monthly income places him within the discretionary range of the guidelines. Mary's net monthly income is $1827. Therefore, under the child support guidelines, James' minimum obligation for support is $1872 ($6000 × 31.2%). James is willing to pay thirty-one percent of his net monthly income or $3150 per month. He now pays $4500 per month.

Because James is in the discretionary range of the guidelines, the statutory factors in Iowa Code sections 598.21(4) and 598.21(8) may be considered. Section 598.21(8) lists the following factors pertinent here that may be considered in determining whether there has been a substantial change in circumstances warranting a modification of a child support order: (1) changes in the employment, earning capacity, income or resources of a party; (2) changes in the residence of a party; (3) remarriage of a party; (4) possible support of a party by another person; and (5) other factors the court determines to be relevant in an individual case.

James relies on a number of factors he claims constitute a substantial change in circumstances since the entry of the decree justifying modification of the child support order. Most of them center on Mary's move to Pennsylvania and the improvement in her financial condition because of her remarriage and her new employment. We agree that these facts do constitute a substantial change in circumstances. Nevertheless, we conclude for reasons that follow that such changes do not warrant modification of the support order. *See* Iowa Code § 598.21(8) ("[T]he court *may* subsequently modify orders made under this section when there is a substantial change in circumstances.") (emphasis added).

Statutory factors we deem relevant, which support our conclusion that modification is not warranted include the following: (1) the financial resources of the child,

(2) the financial resources of both parents, (3) the standard of living the children would have enjoyed had there not been a dissolution, and (4) the children's educational needs. *See* Iowa Code § 598.21(4).

Mary and her husband, Robert, testified that they provide a suitable standard of living for the children. But they pointed out that the standard of living they do provide does not compare in all respects to that which the children enjoyed before the dissolution. James has demanded that the children attend parochial schools and made that demand a part of the modification agreement in September 1993. In accordance with that demand, Mary has all the children enrolled in parochial schools. Tuition for the three children amounts to $9300 per year.

At present, the children live in a home that is comparable to the one in which they lived before the dissolution, but the mortgage payment is substantially higher. Significantly, the stipulation at the time of the dissolution provided that, if Mary purchased a new home, child support would be reduced one dollar for each dollar that the new mortgage loan payment is less than the former monthly payment of $1588. The parties included this provision because James wanted the children to live in an environment to which they were accustomed.

Mary and Robert's monthly household expenses total $9875. Mary testified that she could not provide the standard of living for the children that she does without the $4500 support from James. Although Robert contributes to the household income (he earns $4704 net per month), he has support obligations of his own. *See In re Marriage of Gehl*, 486 N.W.2d 284, 287 (Iowa 1992) (holding that new spouse's income can be considered as it relates to the divorced custodial parent's overall financial condition and ability to pay child support, but such income is not a factor to be considered automatically in the calculation of child support). Robert currently pays college tuition for a son and sends him a monthly living allowance.

Since the dissolution, James' income has increased, his monthly expenses have decreased, and his wife contributes to the household expenses with her income from nursing. Significantly, James no longer has the monthly alimony obligation of $1000. His obligation to maintain life insurance of $1,215,000 has been reduced to $355,000. Although the stipulation did allow James to deduct the mortgage interest on the Iowa City home, the lost deduction resulting from the sale of the home was more than offset when he received $50,000 in cash from the sale.

In refusing to modify the support award, we think the district court had it right when it said:

The Court is satisfied that [James] as willing to pay support in excess of the guidelines because he was able to afford it and was concerned about his children's welfare. It is evident to this Court that he wants his children to live in a manner consistent with his income and ability to pay. [James] has no serious complaints about the way the children are being cared for by [Mary] and her husband.

The generous child support is being used by [Mary] to provide above-average housing, educational opportunities, and other amenities associated with such an income. The Court finds that it would not be in the best interests of the children to reduce the support at this time.

Under the facts and circumstances of this case, we think the district court acted well within its discretion in refusing to modify the child support award. The court's decision promotes, rather than fails, to do equity. We therefore affirm the district courts decision on this issue.

■ **B. Post-high school education.** Since the parties' dissolution, the legislature passed Iowa Code section 598.21(5A), which "is a recent amendment defining a postsecondary education subsidy and providing specific guidelines for ordering parents to contribute to it." *In re Marriage of Murphy,* 592 N.W.2d 681, 683–84 (Iowa 1999). The provision was adopted during the 1997 legislative session. 1997 Iowa Acts ch. 175, § 190. Specifically, the new provision "provides that a parent may be required to pay a postsecondary education subsidy, but the amount to be paid cannot exceed thirty-three and one-third percent of the total costs of an education at an in-state public institution." *In re Marriage of Williams,* 595 N.W.2d 126, 130 (Iowa 1999). James contends this new provision constitutes a substantial change in circumstances requiring modification of his obligation to pay for the children's post-high school education.

Section 598.21(5A) became effective July 1, 1997. The district court heard the matter on July 14, 1997, and issued its posttrial ruling on August 29, 1997. James neither raised the application of section 598.21(5A) at trial nor in a posttrial motion under Iowa Rule of Civil Procedure 179(b). In these circumstances, James has not preserved error on this issue. *See In re Marriage of Vogel,* 271 N.W.2d 709, 713 (Iowa 1978); *In re Marriage of Huston,* 263 N.W.2d 697, 699–700 (Iowa 1978).

## IV. Issues on Cross–Appeal.

■ **A. The COLA provision.** Mary contends the district court should have enforced the COLA provision. In her brief, she agreed to waive any future rights under the provision if we would award her $9867.76, an amount she thinks is due under the provision. In refusing to enforce the COLA provision, the district court found the provision was too vague. In its findings of fact, the court was more specific:

The Court has reviewed the testimony of Linda Crim, a CPA called by [James],

and finds from her expert testimony that the COLA provision found in paragraph 20 of the stipulation is unenforceable because of the vagueness of many of its terms, such as "bona fide net monthly income," "proper bona fide deduction," and "calculated in good faith." [These terms] have little, if any, meaning in accounting language. While [Mary's] husband disputes the testimony of Ms. Crim, the Court finds her testimony to be more credible than Robert Beaves' testimony for the reason that Ms. Crim is a practicing CPA and is extremely familiar with all the Internal Revenue Service's Code provisions and the language contained in those provisions.

Our own review of the expert's testimony confirms these findings. Additionally, we note that the COLA provision is tied to James and Mary's federal tax returns. The CPA also testified that the COLA provision in question (1) does not use definable terms relating to tax law, (2) has terms that are not consistent, (3) does not anticipate how various changes in the future could be incorporated into the provision, and (4) does not contain any baseline assumptions. In addition, the CPA found she could not apply the COLA provision with any degree of certainty. Making her own assumptions, the CPA calculated that James owed nothing under the COLA provision.

In *In re Marriage of Stamp,* we cautioned against using COLA provisions that are keyed to an income tax return because

the preparation of [tax returns] is susceptible to questionable legal interpretations, subjective reasoning and mathematical errors. Trial courts addressing child support issues should not be required to become entangled in the type of controversies that often rage between taxpayers and the revenue services.

300 N.W.2d 275, 280 (Iowa 1981).

As mentioned, the COLA provision is tied to James and Mary's tax returns.

*Stamp* makes clear that there are inherent problems with this nexus. Such inherent problems, together with all of the deficiencies the expert found with the COLA provision here, make it unworkable. For these reasons, we conclude the district court was correct in not enforcing the COLA provision.

There is an additional reason why we should not enforce the provision. Our court of appeals has determined the new permanent child support guidelines preempt COLA provisions in dissolution decrees. *In re Marriage of Ludwig,* 478 N.W.2d 416, 419 (Iowa App.1991). The court of appeals modified the decree in *Ludwig* by deleting the COLA provision found in the parties' decree. *Id.* The court correctly reasoned that the COLA provision was not warranted because the child support guidelines would be subject to periodic review at least once every four years and such reviews would presumably take into consideration cost-of-living increases. *Id.*

■ **B. Transportation expenses.** The district court modified the stipulation by essentially requiring Mary to provide one-half of the children's transportation expenses associated with James' exercise of visitation. Mary contends there is no record evidence to support the modification. We agree.

Mary advised James that in August 1993 she and the children would be moving to Pennsylvania. This prompted James to seek legal advice about a modification of the visitation provisions of the original decree. During negotiations, James insisted that he pay the costs of transportation for this visitation. He admitted telling Mary that he did not want it ever said that she provided one cent so that he could visit the children.

On September 20, 1993, the parties entered a joint application to modify the dissolution decree confirming the parties' agreement that James pay all transportation expenses associated with visitation.

There is no record evidence establishing a substantial change of circumstances on this issue since the modification. We therefore reverse the district court's modification order on this issue.

**C. Attorney fees.** The district court refused to award either party attorney fees. Mary contends the district court should have awarded her attorney fees. In addition, she requests appellate attorney fees.

■ Iowa Code section 598.36 governs the award of attorney fees in a modification proceeding. The provision provides that, in such a proceeding, "the court *may* award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36 (emphasis added). Section 598.36 gives the district court considerable discretion in determining whether the district court should award such fees. *In re Marriage of Krone,* 530 N.W.2d 468, 472 (Iowa App. 1995).

We have discretion to award appellate attorney fees under section 598.36. *See id.* In addressing Mary's request, we consider her needs in making it, James' ability to pay the attorney fees, and whether Mary was obligated to defend the district court's decision on appeal. *See id.*

■ Both parties prevailed in some measure in this modification proceeding in the district court and on appeal. Additionally, the record shows that Mary and her husband Robert have assets in excess of $500,000, making her capable of paying the fees. For all of these reasons, we concluded the district court did not abuse its discretion in refusing to award Mary attorney fees, and we decline to award her appellate attorney fees.

**V. Disposition.**

In sum, we affirm the district court's refusal to modify the child support award, its decision not to modify the post-high school education provision, and its refusal to enforce the COLA provision. However,

we reverse the district court's decision to modify the cost-of-transportation provision on James' visitation with the children. We also affirm the district court's refusal to allow Mary attorney fees, and we decline to award her appellate attorney fees.

**AFFIRMED ON APPEAL; AFFIRMED IN PART AND REVERSED IN PART ON CROSS–APPEAL.**

All justices concur except CARTER, J., who takes no part.