## IN THE COURT OF APPEALS OF IOWA

No. 14-1491
Filed May 20, 2015

IN RE THE MARRIAGE OF LEANN DIECKMAN
AND CRAIG DIECKMAN

Upon the Petition of
LEANN DIECKMAN,
    Petitioner-Appellant,

And Concerning
CRAIG DIECKMAN,
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Muscatine County, John D. Telleen, Judge.

Leann Dieckman appeals from the district court's order terminating Craig Dieckman's spousal support obligation. **REVERSED.**

Brian J. Metcalf of Metcalf, Conlon & Siering, P.L.C., Muscatine, for appellant.

Esther J. Dean, Muscatine, for appellee.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

Leann Dieckman appeals from the district court's order terminating the remainder of Craig Dieckman's spousal support obligation. Because we find the termination of spousal support fails to do equity between the parties, we reverse.

**I.      Background Facts and Proceedings.**

Leann and Craig Dieckman were married in December 1987 and divorced in 2013. During the twenty-five-year marriage, Craig was in the Army and served a tour of duty in the Gulf War.

Their first child, S.D., died at age three months due to a genetic disorder in 1990. They had another child, M.D., and Leann quit working as a motel housekeeper to be a stay-at-home mother. The couple had a third child, L.D., who also suffered from a genetic disorder; she died in 2001. Leann went back to working outside the home after L.D. died. Leann again worked as a hotel housekeeper.

In July 2012, Leann filed a petition for dissolution of marriage. In August 2012, Craig began receiving disability benefits of $1487.73 every two weeks. In September 2012, Craig was to have [unnamed] surgery with an expected recovery period of twelve weeks. In an affidavit filed in the dissolution proceeding in January 2013, Craig stated:

> Over the years I have developed back problems from all of the long hours and hard work and in the last 2 years I have had 2 back surgeries. I was also diagnosed with PTSD last year, severe depression, and anxiety. I was hospitalized last February due to these diagnos[es] and because of the stresses of being separated and possibly heading into a divorce. I have since been in counseling and been on prescription medications to control my depression and anxiety.

A temporary spousal support order was entered on January 8, 2013, requiring Craig to pay Leann $755 per month. On January 23, 2013, a dissolution decree based upon the parties' stipulation was entered—Craig was to pay Leann spousal support of $750 per month for forty-eight months.

On February 18, 2014, Craig filed an application to modify spousal support, asserting he was "now receiving long term disability payments which began May 19, 2013," and had applied for Social Security benefits. Two exhibits were attached to the application. The first was a letter from the Social Security Administration, stating Craig would receive $14,921 (money due for November 2013 through May 2014) and he could expect monthly payments of $2143 beginning June 2014.

The second was a letter from Monsanto indicating,

> Going forward, and as long as you continue to be approved for Long-Term Disability benefits through Monsanto, your bi-weekly salary will be as follows as of your 7/11/14 paycheck until further notice:
> 
> | | |
> |---|---|
> | LTD Salary | $1532.96 |
> | SS Offset | -$ 963.23 |
> | Gross Pay | $ 569.73 |
> 
> Your current Before-Tax Deductions include:
> 
> | | |
> |---|---|
> | 401(k) Contribution (SIP) | $ 76.65 |
> | Dental | $ 15.18 |
> | Medical | $ 43.84 |
> | Vision | $ 5.82 |
> | Group Life Ins | $ 2.15 |
> | Accidental Death Ins | $ 6.92 |
> | Disability | $ 3.50 |
> | Life Ins Credit | -$ 5.40 |
> | Life Group | $ 14.25 |
> | Spouse Life | $ 1.23 |
> | Child Life | $ .73 |
> | Group Legal | $ 7.27 |
> | Support--Spouse | $273.24 |
> | Service Charge | $ 2.00 |

| | |
|---|---|
| Federal Tax Withholding | $ 9.61 |
| Iowa State Tax Withholding | $ 9.63 |
| Net pay | $103.11 |

Please note that as of your 7/11/14 paycheck, there is not enough money to pay your two SIP loans in the amounts of $147.24 and $166.33, so please . . . make arrangements to pay them directly.

Also, in the state of Iowa, employers can only withhold up to 50% of an employee's disposable income for all orders, which is why your spousal support payment was reduced to $273.24 (instead of $346.15). Please refer to your spousal support order for additional details.

At the August 12, 2014 hearing on Craig's modification petition, Craig testified he was forty-six years old and would likely never work again. He stated there was a "possibility" he would have to go into an assisted living facility and that he was going to be adding a ramp to the entrance of his residence so he "can more easily get into the house."

Craig testified he had begun receiving short-term disability in May 2013 "when I had the surgery for the deep brain stimulator," which was related to "benign essential tremors" in his hands that developed "[a]fter the Gulf War." Craig testified that in October 2013, he had a seizure and was diagnosed with epilepsy. He stated that beginning in January 2014, he went on long-term disability from Monsanto, where he had been employed for seventeen years. He also testified he had had surgery "in the last couple weeks" that had to do with the deep brain stimulator, which was unrelated to his epilepsy. He testified the "majority" of his medical bills were covered by his insurance.

Craig testified that his monthly income now is limited to Social Security disability benefits and long-term disability benefits from Monsanto. He explained

that the SIP loans noted in the Monsanto letter above "are loans against my savings and investment plan at Monsanto that were taken to pay off bills." He did not explain what bills.

Craig also testified that in August 2013 he had inherited about $190,000 in investment accounts when his mother died. He stated he had been "taking $1000 a month out of those accounts." In November 2013, Craig moved into a mobile home, for which he paid $37,000 outright. He testified he purchased a 1999 convertible Mustang for $6000 "[f]our months ago"; a pontoon boat for $1500 "two months ago"; and three guns for about $1000. When asked if he expected to do a lot of boating in the future, he replied "I would hope so."

Craig stated he was currently married to Pam Dieckman but was in the process of a divorce.

Leann testified she was currently living in Topeka, Kansas, with her boyfriend of one and one-half years. She testified she did not pay rent but has "other arrangements with things around the house to help out." Leann was working thirty to forty hours per week in housekeeping making eight dollars per hour. Her total income for 2013 was $18,000, which included $9000 in alimony and "some taxable pension." Leann testified her wages for 2013 were $6471 because she "had problems finding a job." Leann testified she had a high school diploma and had never made more than minimum wage because she had "stayed home to take care of the sick kids." Leann stated she paid $160 per month for her adult child's car payment to "make sure she is able to graduate."

At the close of the hearing, the district court ruled from the bench:

It's very clear to the Court that there's been a large material substantial change in circumstances not contemplated by the court at the time the decree was entered. After the decree was entered, Mr. Dieckman suffered seizures, had brain surgery to implant wires, implant in his chest, he has PTSD, he has tremors, he has an ongoing seizure problem, he has been found permanently and totally disabled from working, he walks with a walker, his gait is halting. . . . I don't mean to be insulting by this comment but Mr. Dieckman appears to the court to be about 65 years old instead of 46 years old.

I think he's been told by his doctors he can't work, he's been told that an assisted living facility is a real possibility for him. The only thing that has saved him is his inheritance. I do not find it would be supported by Iowa law or in any way equitable under these circumstances to consider his inheritance. First, it's not a marital asset, and second, even under those limited circumstances where inherited money is considered part of a mix in a married couple situation, that's not considered after the divorce . . . .

With regard to Ms. Dieckman, she is very clearly under-employed. I think she chooses to work at a minimum wage job. She appears well spoken, healthy, attractive, intelligent, I don't think there is any reason Ms. Dieckman couldn't increase her earning capacity should she choose to do so . . . .

The district court terminated Craig's support obligation. In the written ruling which followed, the court found:

The Court finds there ha[ve] been a number of serious and substantial changes in circumstances that have occurred since the Decree was entered. In October of 2013, [Craig] suffered from seizures and he was diagnosed with epilepsy. He underwent brain surgery to have a deep-brain stimulator implanted in his brain. This device is connected to a separate device implanted in his chest with wires leading to the brain to treat his epilepsy. The Court found his testimony to be credible concerning the extent of his physical disabilities. In addition to seizures, he suffers from a balance disorder, fatigue, memory issues and problems with speech. The Court witnessed this while [Craig] was on the witness stand. He had problems finding the right word and had slow and halting speech. He is also hearing impaired. Further, [Craig] has tremors in his hand and wears a brace on his left wrist and hand. . . .

    . . . .

The home owned by [Craig], which was the marital home, is currently in foreclosure. He lives in a mobile home that he purchased outright with inherited funds. In the near future, he will

need to have an handicap accessible ramp constructed to the mobile home. All of the above medical conditions arose after the parties' divorce.

After [Craig] experienced his seizure disorder, he was placed on temporary disability through a disability policy with his employer, Monsanto. He began receiving long-term disability payments from Monsanto in the amount of $1532.96 per month in January of 2014. . . . [His] gross current monthly income is $3377 per month not including approximately $1000 a month which he withdraws from an annuity. . . .

. . .

[Leann] is 45 years old and has relocated to Topeka, Kansas. She lives with her boyfriend and pays no rent. . . .

[Leann] testified that she currently earns $8.00 an hour as a housekeeper for a hotel and works 30 to 40 hours a week. She is a high school graduate. [Leann] appeared to the Court to be a healthy and no physical problems were identified. She is a well spoken and attractive woman. [Leann] has not made any efforts to continue her schooling or obtain more gainful employment.

. . . .

. . . Based on [Craig's] testimony about the potential need for assisted living facility and based on the Court's own observation of his gait, his halting speech pattern, the brace on his left arm, his recent brain surgery, his epilepsy and other physical and mental health problems, the Court finds that he does not have the reasonable ability to pay spousal support.

[Leann] certainly spent much of the parties' marriage caring for the children and that is to be commended. However, there is absolutely no evidence to indicate that she is incapable of increasing her financial status in life by obtaining more gainful employment and no evidence she is incapable of supporting herself. [Leann] did not dispute that she cohabitated with her boyfriend. The burden shifted to her to demonstrate her continued need for support and she failed to meet this burden. She has done nothing to increase her education or her earning potential and the Court concludes she is well able to do so. [Leann's] cohabitation with her boyfriend without being required to pay rent decreases her need for support.

Leann appeals, contending Craig failed to prove the termination of spousal support was justified, and the district court erred in denying her request for attorney fees.

**II.     Scope and Standard of Review.**

We review an order modifying a decree for dissolution of marriage de novo.  *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014).  We give weight to the findings of the district court, especially with regard to the credibility of witnesses, but are not bound by them.  *Id*.  We will disturb the trial court's ruling only when there has been a failure to do equity.  *Id.*

"[W]e give the district court considerable discretion in determining whether it should award fees at the district court level."  *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013).

**III.    Discussion.**

*A. Spousal support.*  "Provisions for the payment of support in a decree of dissolution of marriage are normally final as to the circumstances existing at the time."  *Sisson*, 843 N.W.2d at 870.  Courts are permitted to "modify child, spousal, or medical support orders when there is a substantial change in circumstances."  Iowa Code § 598.21C(1) (2013).  All relevant factors are considered in determining a substantial change in circumstances, including "[c]hanges in employment, earning capacity, income, or resources of a party"; a party's receipt of "an inheritance, pension, or other gift"; "[c]hanges in medical expenses"; and changes to health, residence, and marital status.  *Id*. § 598.21C(1); *see Sisson*, 843 N.W.2d at 870.  "Of course, the changed circumstances must be material and substantial, essentially permanent, and not within the contemplation of the court at the time of the decree."  *Sisson*, 843 N.W.2d at 870-71.  Moreover, "[e]ven if a substantial change is shown, we will not modify the terms of the decree unless its enforcement will be attended by a

positive wrong or injustice as a result of changed conditions." *In re Marriage of Sjulin*, 431 N.W.2d 773, 776 (Iowa 1988).

There is no doubt there have been changes to both parties' circumstances. Craig has remarried and is going through another divorce. He is now permanently disabled. Contrary to the district court's findings, however, not all of Craig's health problems occurred after the dissolution. At the time the dissolution was pending, Craig was on temporary disability and was awaiting surgery. His posttraumatic stress disorder, anxiety, and benign tremors were all referred to in his affidavit filed in the dissolution decree. The district court also incorrectly stated the deep brain stimulator was related to Craig's epilepsy when Craig testified it related to his hand tremors.

Craig receives $3377 per month: $2143 in Social Security disability income and $1234.41 in long-term disability from Monsanto. He also inherited about $190,000 from his mother. His current residence is paid for, and though he had the money to pay for the marital residence, he chose to let it go into foreclosure, living there without making payments for a year and a half. His health and life insurance payments are made out of his check from Monsanto. On cross-examination, Craig acknowledged he was able to pay the remaining twenty-nine months of spousal support.

For her part, Leann moved out of state and is residing with someone who does not require that she pay rent. We have said, "Cohabitation can affect the recipient spouse's need for spousal support and is therefore a factor to consider in determining whether there has been a substantial change in circumstances warranting modification." *In re Marriage of Ales*, 592 N.W.2d 698, 703 (Iowa Ct.

App. 1999). Leann is making eight dollars per hour as a housekeeper, working thirty to forty hours per week. This is the same type of employment she had when she was married to Craig. Her monthly income, assuming she works forty hours per week, is $1280. She testified that without spousal support she would have to move back to her parents' home and "would not be able to make my car payment, my insurance, I am paying for [Craig and] my daughter's car for the last year and I will pay her car payment when she goes to college for the next two years."

The trial court found Craig's inheritance was not to be considered in light of his health. But even without considering the inherited funds, Craig's monthly income is $3377 while Leann's is $1280. The trial court faulted Leann for doing the same type of work she has done in the past, but does not explain how it was that the court determined she could increase her earning capacity. This is not a case where a party has voluntarily reduced that person's income, which is a valid consideration. *Cf. Sisson*, 843 N.W.2d 866, 872 ("We have held that voluntary changes in employment that reduce income do not normally justify a change in circumstance to support a modification of spousal support."); *Ellis v. Ellis*, 262 N.W.2d 265, 267-68 (Iowa 1978) (noting the "ability to pay alimony is to be determined on the basis of [one's] earning capacity rather than by the amount of . . . voluntarily reduced income").

The trial court also notes Leann assists her daughter with car payments while the daughter is going to school. Leann and Craig were married for twenty-five years, during which time Leann cared for their three children. Leann and

Craig buried two of their children. We find it understandable Leann would wish to continue to assist their daughter while she pursues her schooling.

The limited spousal support awarded under this decree, "[w]hether described as transitional or rehabilitative, . . . reflects the disparity in the parties' relative needs and earning capacities upon the dissolution of their marriage." *In re Marriage of Smith*, 573 N.W.2d 924, 927 (Iowa 1998). Leann has shown she still has a need for support. *See Ales*, 592 N.W.2d at 703 ("Once the payor has established cohabitation, "the burden will shift to the recipient to show why spousal support should continue in spite of the cohabitation."). We conclude enforcement of the remaining twenty-nine months of spousal support awarded in the decree would not be "attended by a positive wrong or injustice as a result of changed conditions." *See Sjulin*, 431 N.W.2d at 776. Consequently, we conclude the district court's termination of spousal support under the circumstances fails to do equity between the parties and we reverse.

*B. Attorney fees.* Leann asserts we should award her the $2000 attorney fees that she requested in the district court, as well as appellate attorney fees.

> Section 598.36 addresses attorney fee awards in modification proceedings. The section provides that the district court "may award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. We have emphasized that the language of the provision is permissive and that we give the district court considerable discretion in determining whether it should award fees at the district court level. *See In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). We have similar discretion in awarding appellate attorney fees. *See id.* We have often explained the controlling considerations in the attorney fee determination are the parties' respective abilities to pay. *. . .* We may also consider whether a party resisting the modification petition was successful, and whether a party has been obliged to defend the trial court's decision on appeal. *In re Marriage of Bolick*, 539 N.W.2d 357, 361 (Iowa 1995).

*In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). After carefully considering each of these factors, we award $2000 in appellate attorney fees to Leann. Costs on appeal shall be taxed to Craig.

**REVERSED.**