# IN THE COURT OF APPEALS OF IOWA

No. 17-1595
Filed June 6, 2018

IN RE THE MARRIAGE OF HEATH PAULSEN
AND KATI PAULSEN

Upon the Petition of
**HEATH PAULSEN,**
        Petitioner-Appellee,

**And Concerning**
**KATI PAULSEN,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Kossuth County, Nancy L. Whittenburg, Judge.

        Kati Paulsen appeals the district court decision to modify a dissolution decree to grant Heath Paulsen physical care of their two children. **AFFIRMED AND REMANDED.**

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

        Kristy B. Arzberger of Arzberger Law Office, Mason City, for appellee.

        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**TABOR, Judge.**

Their February 2015 divorce decree awarded Kati and Heath Paulsen joint physical care of their preschool-aged twins. In August 2016, Kati asked the court to modify the decree to grant her physical care because she planned to move to a new residence two and one-half hours away. Heath responded by asking to maintain shared care or, alternatively, to be the physical custodian. The court granted Heath physical care. Kati appeals. On our de novo review, we reach the same conclusion as the district court—circumstances have changed substantially, and the parents' conduct since the divorce shows Heath can provide superior care.

## I. Facts and Prior Proceedings

Kati and Heath were married 2009; their twin son and daughter were born in 2012. In December 2014, the couple signed a stipulated dissolution decree establishing joint legal custody and joint physical care of their children. The district court approved the stipulation and filed the decree in February 2015.

Following the dissolution, Heath stayed in the marital home in Lakota, and Kati lived nearby in Bancroft. But in October 2016, Kati moved to Cedar Falls. There, she attends Hawkeye Community College taking mostly online classes and works part-time, remotely, as an office manager for a Bancroft business. Kati lives with her boyfriend, Mark. Heath continues to farm part-time and works in a landscaping business. Also in October 2016, Heath married Brittany, who has an eight-year-old son.

Based on her move, Kati filed a petition to modify the shared care arrangement. Heath filed a counter petition. The district court entered a ruling to modify, granting Heath physical care. Kati challenges the ruling on appeal.

## II.    Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity."  *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (quoting *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015)).  "Thus, we review the district court's decision de novo."  *Id.* (citing *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014)).  We make our own findings of fact but "give weight to the district court's findings" particularly relating to witness credibility.  *Id.* (citing *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013)).

## III.    Analysis

To modify physical care, the petitioning party must "prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered."  *Id.*  The party seeking change must prove "a superior ability to minister to the needs of the children."  *Id.* (citing *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).  "The changed circumstances affecting the welfare of children and justifying modification of the decree 'must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.'"  *Id.* (citing *Frederici*, 338 N.W.2d at 158).  "The party seeking to modify a dissolution decree thus faces a heavy burden, because once custody of a child has been fixed, 'it should be disturbed only for the most cogent reasons.'"  *Id.* (citing *Frederici*, 338 N.W.2d at 158).

### A.  Burden of Proof

Kati contends the district court applied the wrong burden of proof in its modification decision.  She argues, under our case law, on a petition for modification where the original decree provides for joint physical care, "the 'heavy

burden' of proving 'superior care' is lessened," and she only needed to prove she would be the "better" parent. *See Melchiori v. Kooi*, 644 N.W.2d 365, 369 (Iowa Ct. App. 2002). Kati contends the district court held her to a heavier burden in finding she could not offer "superior care" compared to Heath.

We agree that under *Melchiori* "where the applying party has proved a material and substantial change in circumstances, the parties are on equal footing and bear the same burden as the parties in an initial custody determination; the question is which parent can render 'better' care." *In re Marriage of Kreager*, No. 10-0945, 2011 WL 1584293, at *2 (Iowa Ct. App. 2011) (citing *Melchiori*, 644 N.W.2d at 369). But we disagree with Kati's contention that the modification order misapplies the burden. The district court balanced the strengths shown by both parents and ultimately determined Heath was more stable and had "the ability to minister more effectively" to the wellbeing of the children.

## B. Merits

Having sought modification, Kati agrees the parties experienced a substantial change in circumstances justifying a new physical care arrangement. The change was Kati's relocation to Cedar Falls to live with her boyfriend, Mark, when he received a job offer there. Her testimony suggested the move was permanent. The distance of 144 miles from Heath's home made it impractical to continue the shared-care arrangement. Several other provisions in the decree were upended by Kati's move. For instance, the decree recognized Heath's mother—who lives just two miles from Heath—would provide daycare for the children and after-care once they attended preschool. The parties also stipulated the twins would attend North Iowa Community Schools through high school

graduation. And the parties agreed to give each other the first refusal of care, outside of biological family members, during their parenting time.

On appeal, Kati contests the district court's conclusion Heath showed a superior ability to minister to the twins' needs. When deciding the merits of Kati's position we look to non-exclusive lists of factors for determining what physical care arrangement is in the children's best interests. The lists appear in Iowa Code section 598.41(3) (2017)[1] and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).[2] Kati argues she can offer the children superior care in Cedar Falls because she has been the more hands-on parent—scheduling doctor's appointments and handling the day-to-day tasks of raising preschoolers. Kati asserts Heath does not communicate effectively with her and delegates most of his parenting duties to his mother.

For his part, Heath defends the modification order—arguing he is "the parent who will best raise the children and place the children in a safe, stable and loving environment with a strong support system less than two miles away." In his view, the twins should remain close to his extended family, as well as Brittany's

---

[1] These include, in relevant part:
- whether the parent is a suitable custodian;
- whether the parents can communicate with each other regarding the children;
- whether the parent has actively cared for the child before and since separation;
- whether each parent can support the other parent's relationship with the child;
- the geographical proximity of the parents; and
- whether the safety of the child will be jeopardized.

*See* Iowa Code § 598.41(3).

[2] These include, in relevant part:
- the emotional, social, moral, material, and education needs of the child;
- the effect on the child of continuing or disrupting an existing custodial status; and
- any other relevant matter the evidence in a particular case may disclose.

*See Winter*, 223 N.W.2d at 166-67.

extended family, being cared for by their grandmother, and attending the local school district specified in the decree. Heath further asserts Kati's alcohol consumption negatively affects her parenting, a problem she does not adequately recognize or address. He contends Kati has left the children with inappropriate babysitters, and points to her decision to move to Cedar Falls to be with a boyfriend of five months as evidence of her impulsivity and "an elevation of her desires over the best interests of the children to benefit from shared care."

Kati testified her move to Cedar Falls related partially to her efforts to pursue a degree in accounting and be closer to her family. But a friend testified Kati has not enjoyed a close relationship with her own family, who live in the Quad Cities, more than two hours farther than Cedar Falls. Kati's mother has only seen the twins a few times. Plus, most of Kati's classes are online; she must be present in a classroom in Cedar Falls just once a week. The record shows Kati was primarily motivated to move to Cedar Falls by her desire to live with her boyfriend, who found work there.

Further testimony in the record shows Kati's drinking habits negatively affect her parenting. In January 2015, one month before the dissolution, she had been drinking at a bar and drove her car into a ditch. That same month, she was drinking, hit a utility pole, and did not remember what happened until the next morning when she saw the damage to her car. On another occasion in March 2016, Kati started drinking at home, then went to a local bar to drink more, leaving the twins home alone. She was so intoxicated she did not remember what she had done until several days later. Yet Kati minimizes the risk posed by her drinking, claiming she learned from her mistakes.

A parent's alcohol abuse may be grounds for transferring care of children to the other parent. *See In re Marriage of LeGrand*, 495 N.W.2d 118, 120 (Iowa Ct. App. 1992). The district court found, "The history of Kati's abuse of alcohol and the dangerous circumstances she has placed both herself and the children in while under the influence presents too great a risk to the children to entrust her with primary physical care." After reviewing the record, we share the district court's concerns about Kati's instability.

Heath has been the more stable parent since their divorce. He has maintained a home in the same community where the twins have lived since birth. He and Brittany focus on the needs of the twins and their stepbrother. Heath profits from the support of his extended family—particularly his mother, Joyce. Kati's allegation that Heath leaves most of the parenting to Joyce was not borne out by the record. The district court found Joyce credible in her testimony that Heath stepped up to provide day-to-day care for the twins. We give weight to the court's assessment and agree Heath does not abdicate his parenting responsibilities to Joyce. The district court also rejected Kati's contention Heath was solely to blame for their poor communication since the divorce. After combing through seventy-one pages of text messages submitted into evidence, the district court concluded the parents were capable of exchanging information about the children.

Overall, the district court had more confidence in Heath's ability to provide a safe and stable environment for the children. His conduct since the divorce instilled greater trust in his ability to minister to their needs. Accordingly, the court concluded the twins' best interests were served by placing them in their father's

physical care, with visitation for Kati. We reach the same conclusion after reviewing the full record.

### C. Attorney Fees

Both Heath and Kati request appellate attorney fees. In a proceeding to modify a dissolution decree, "the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. An award of appellate attorney fees is not a matter of right, but rests in our discretion based on the parties' relative abilities to pay and the merits of the appeal. *See In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). Both parties work at least part-time. Heath prevailed on appeal. Kati should contribute toward his cost in defending the district court's decision. Heath asserts Kati should be responsible for his attorney fees in the amount of $5000, but his attorney did not file a supporting affidavit. Accordingly, we remand for the district court to determine the amount of appellate attorney fees to be paid by Kati and to enter judgment against her in a reasonable amount. *See Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005) (noting amount of appellate attorney fees is frequently decided first in the district court because of the need for a record). Costs of the appeal are taxed to Kati.

**AFFIRMED AND REMANDED.**