# IN THE COURT OF APPEALS OF IOWA

No. 19-1382
Filed September 23, 2020

IN RE THE MARRIAGE OF TALI G. GREENSPON
AND DAVID M. GREENSPON

Upon the Petition of
**TALI G. GREENSPON,**
        Petitioner-Appellee,

**And Concerning**
**DAVID M. GREENSPON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.


        A father challenges the new visitation schedule following his ex-wife's move with their children from West Des Moines to the Chicago suburbs.  **AFFIRMED.**


        Kimberley K. Baer of Baer Law Office, Des Moines, for appellant.

        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

David Greenspon appeals the district court order modifying visitation after his ex-wife Tali moved with their three children from central Iowa to the north Chicago suburbs. He preferred an interim arrangement, where the children flew back and forth every other weekend. Finding that schedule would be tiring even for an adult, the court reduced the children's travel to once per month and increased David's visitation during school breaks. Because the modification order satisfied Iowa Code section 598.21D (2019) and served the children's best interests, we affirm.[1]

## I. Facts and Prior Proceedings

David and Tali divorced in March 2016. Now at issue is the visitation schedule for their three children—sixteen-year-old daughter, E.G., and twin nine-year-old sons, D.G. and J.G. After the divorce, both David and Tali lived in West Des Moines. Tali had physical care of the children, while David had visitation one weeknight and every other weekend.

In April 2018, Tali notified David that she intended to relocate with the children to Bannockburn, Illinois. (She planned to move in with her father. David also had extended family members who lived in the Chicago area.) Later that spring, Tali petitioned to modify the visitation schedule to accommodate the greater

---

[1] We review the modification order de novo. *See In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015); *see also* Iowa R. App. P. 6.907. For fact finding, especially on credibility, we rely on the impressions of the district court judge who saw the witnesses' demeanors. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

distance between her new household and David's residence. David objected to Tali's move, but the court denied his request for an injunction.

In October 2018, the parties agreed to an interim order on visitation. The order included parenting time for David every other weekend. Tali agreed to pay for the children's twice-monthly flights from Chicago O'Hare to the Des Moines International Airport, as long as the cost per ticket was less than $500. That arrangement lasted for about eight months.

In April 2019, the district court held three days of hearings on Tali's modification petition. The court heard from several witnesses, including both parents. And their almost sixteen-year-old daughter E.G. testified in chambers. E.G. told the court that she was adapting well to her new school—making friends, excelling in advanced-placement classes, and trying new activities such as cross country and track at Deerfield High School. She enjoyed having family from both her mother and father's sides nearby. But E.G. also testified that flying back and forth to Iowa every other weekend forced her to "miss out on opportunities," including extracurricular and social events. E.G. further testified that during visitations her father did not always ensure that her brothers followed a routine— like showering, brushing their teeth, or observing a bedtime. E.G. testified she felt obliged to enforce rules as their mother would do, were she present.

Both parents offered some charitable assessments of the other. But they disagreed about visitation. For example, Tali testified that she and David have different parenting styles, but the children benefit from spending time with both of them. She described the difference: "[H]e offers them wonderful experiences," but "they don't really have a lot of schedule." She continued: "I'm more scheduled. I

get them to bed on time. I help them with their homework. I don't think they have that [with David], but they have an awful good time with him." She told the court she wanted a visitation schedule that "would work for the children to get settled— better settled in their area at home in Chicago." She described the amount of travel time under the interim agreement as "very difficult" for the children.

Likewise, David testified the children were "blessed to have two loving parents." But he bemoaned that their move "has only made it more difficult to be a part of their lives." He believed the temporary schedule had been working well. David acknowledged he let the boys stay up past midnight during visitation. But he testified the children were not suffering because of the travel time, and he agreed to be flexible if E.G. needed to rearrange her visitation time to participate in track meets or other events.

In the modification ruling, the district court first clarified:

> There is no dispute there has been a substantial change in circumstances sufficient to support a change in the visitation schedule. Tali and the children now live in the Chicago, Illinois, metro area, which is a fairly significant drive or flight away from West Des Moines, Iowa, where David lives.

Next, the court found it was in the children's best interests "to reduce the number of required weekend visitations taking place in West Des Moines." The court recognized parenting time with David was important but found their current schedule was "not feasible or appropriate for the children." The court noted that David's failure to enforce a bedtime for the boys left them tired out for their return to school on Monday mornings. The court ruled that the children would not be required to travel to Iowa more than one weekend per month, but that David could exercise "other parenting time in Illinois." The court also granted David three

consecutive weeks with the children at the beginning of the summer and two consecutive weeks near the end of the summer.

David moved to enlarge or amend the findings. The court rejected his "broader arguments" but made "some adjustments to the schedule suggested by David to better maximize his time with the children." The court also awarded David ten days of visitation over winter break. David now appeals.

## II. Analysis

## A. Visitation Schedule

"No move is easy, even for adults." *In re Marriage of Frederici*, 338 N.W.2d 156, 160 (Iowa 1983). In 2005, the legislature addressed the substantial change in circumstances that may be precipitated by one parent's move by enacting Iowa Code section 598.21D. That section gives the district court discretion to decide whether a distant relocation merits modification:

> If a parent awarded joint legal custody and physical care . . . is relocating the residence of the minor child to a location which is one hundred fifty miles or more from the residence of the minor child at the time that custody was awarded, the court may consider the relocation a substantial change in circumstances.

Iowa Code § 598.21D. The section also provides guidance if the court does decide to modify the custody order:

> If the court determines that the relocation is a substantial change in circumstances, the court shall modify the custody order to, at a minimum, preserve, as nearly as possible, the existing relationship between the minor child and the nonrelocating parent. If modified, the order may include a provision for extended visitation during summer vacations and school breaks and scheduled telephone contact between the nonrelocating parent and the minor child. The modification may include a provision assigning the responsibility for transportation of the minor child for visitation purposes to either or both parents. . . .

*Id.*

David agrees Tali's move of more than three-hundred miles constituted a substantial change in circumstances. But he claims the district court ignored the legislative directive to "preserve, as nearly as possible, the existing relationship between the minor child and the nonrelocating parent." By David's calculation, the modification order reduced the nights the children would spend in Iowa from about 104 under the interim order to about seventy under the new schedule. He alleges that reduction runs afoul of the statutory mandate that "liberal visitation rights" should "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." *See* Iowa Code § 598.41(1)(a).

When determining visitation rights, we must do what is in the best interests of the children. *See In re Marriage of Hunt*, 476 N.W.2d 99, 103 (Iowa Ct. App. 1991). Without a doubt, "[c]ontinuing and frequent contact with both parents" is in the best interests of E.G., D.G., and J.G. *See In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991). That concept carries even greater weight here given the healthy relationship that David enjoys with the children. *See id.* at 235.

At the same time, the best-interests equation factors in more than just parental contact. It takes into account the experiences that children need to promote their own growth and development, independent of their parents. For instance, we recognized in *Hunt* that a child approaching her middle school years "will presumably be increasingly involved with school and friendship related activities" and, as a result, found reducing visitation and necessary travel time to one weekend a month was reasonable. 476 N.W.2d at 103; *see In re Marriage of*

*Winey*, No. 15-0363, 2015 WL 5311391, at *3 (Iowa Ct. App. Sept. 10, 2015) (upholding visitation schedule that allowed "children to maintain a relationship with their mother and also engage in meaningful social and extracurricular activities with their father and in their community").

At trial, E.G. offered mature insights about the strain of spending every other Friday night shuttling between airports and refereeing spats between her younger brothers. The teenager also expressed concern that she was missing opportunities at Deerfield High School and time with her new friends when she was traveling back and forth to West Des Moines. In its ruling, the court acknowledged E.G.'s concerns about the interim visitation schedule "based on her involvement in high school activities, the lack of structure for her brothers during their visitation, and the general challenges to flying every other weekend." Considering E.G.'s age and intelligence, the court appropriately considered her wishes as one factor in crafting the visitation schedule. *See In re Marriage of Dally*, No. 04-0607, 2007 WL 2257116, at *2 (Iowa Ct. App. Aug. 8, 2007); *see also Hunt*, 476 N.W.2d at 101 ("When a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling may be considered by the court, with other relevant factors, in determining child custody rights.").

Yet on appeal, David faults the district court for placing priority on the children's extracurricular activities and friendships at the expense of time with the noncustodial parent. He also reasons the children were not harmed by the every-

other-weekend flights because they were seasoned travelers and continued to thrive in school and social settings under the interim visitation schedule.[2]

Contrary to David's position, we find the district court struck an appropriate balance between preserving his existing relationship with the children and minimizing the disruption to their social and extracurricular activities. The court compensated David with extended time with the children during the summer and other school breaks. That visitation trade-off appears as a viable option for modification under section 598.21D. Still, David complains the district court ignored his testimony that he is busy with work in the summer and does not have a "caretaker" for the children. He also asserts, somewhat contradicting his first complaint, that the children have summer camps that would conflict with his parenting time. His complaints are not well placed. David is willing to have his children expend their time and energies year-round traveling to spend more time with him but not to adapt his own summer schedule to spend time with them.

Another option for expanded visitation is for David to travel to Illinois and see the children in their new home environment. The modification order allowed him to "exercise parenting time the third weekend of each month in the Chicago, Illinois metro area." Like the district court, we find David exaggerated the difficulties he faced in traveling to the Chicago suburbs to see the children. To some extent, David holds the key to increasing the frequency of his visitation. *See In re Marriage of Bunch*, 460 N.W.2d 890, 892 (Iowa Ct. App. 1990) ("We see no

---

[2] David cites several unpublished cases of our court, where we upheld every-other-weekend visitation despite hours of travel for the children. We find these dispositions of little value because our determination depends on the particular facts of this case. *See In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

reason to differentiate between appellant's visits to Florida and his daughter's visits to Iowa.").

After considering the entire record, we find the modified visitation schedule serves the best interest of the children and decline to disturb it.

**B.      Notice Requirements**

Separate from the visitation schedule, David objects to the "strict notice requirements" in the modification order.  The order mandates that should he plan to travel with the children out of state for more than two nights, he must give Tali five days' advance notice.  If the travel is for two overnights or fewer, the notice requirement is two days.  The order also requires two days' notice if David plans to be in Chicago and wants to visit the children.  He asks us to shorten all of those notice provisions to twenty-four hours.

Tali testified at trial that she did not object to the children traveling with David but would like to have some time to prepare.  She testified his proposal for twenty-four-hour's notice would be difficult given the children's many activities.  David offers no compelling reason why he cannot meet the existing notice requirements.  We decline to modify the order.

**C.      Make-Up Visitation**

David also complains that the modification order does not provide for "make-up visitation" if the children's flights are cancelled due to weather or other issues.  David does not cite to the place in the record where he requested such a provision.  And Tali argues he did not preserve this request in the district court.  We agree David's failure to preserve error prevents us from reaching this claim. *See In re Marriage of Maher*, 596 N.W.2d 561, 567 (Iowa 1999) (applying rules of

error preservation in dissolution appeal). That being said, we would encourage the parties to cooperate in rescheduling David's visitation time if unavoidable circumstances result in flight cancellations.

### D. Travel Costs

David objects to the provision in the modification order holding him responsible for travel costs during the second half of the children's summer visitation. He contends because Tali made the unilateral decision to move to a Chicago suburb, she must shoulder the entire expense of transporting the children to visitations with David. He cites several unpublished cases, surmising that we have "routinely held that it is the custodial parent's responsibility to pay for transportation costs to and from visitation with the noncustodial parent."[3] By contrast, Tali reads those cases as revealing "no bright-line rule requiring that the relocating parent must pay all the transportation expenses."

Like Tali, we detect no presumption in those decisions that the relocating parent must bear all of the travel costs for visitation. As we must, we return to the language of section 598.21D. That provision allows the district court to assign "the responsibility for transportation of the minor child for visitation purposes to either or both parents." Iowa Code § 598.21D. When we consider the relative financial positions of the parents, we find the modification order equitably divided the transportation costs.

---

[3] David relies on *Collins v. Natera*, No. 18-2060, 2019 WL 6358431, at *6–7 (Iowa Ct. App. Nov. 27, 2019); *In re Marriage of Yazigi*, No. 13-1553, 2015 WL 1046129, at *3 (Iowa Ct. App. Mar. 11, 2015); *In re Marriage of Ginger*, No. 13-1908, 2014 WL 5478145, at *3 (Iowa Ct. App. Oct. 29, 2014); and *In re Marriage of Worzala*, No. 09-1191, 2010 WL 2757127, at *1–2 (Iowa Ct. App. July 14, 2010).

### E.     Attorney Fees

In his final issue, David contends the district court abused its discretion in denying his request for trial attorney fees.  He also requests appellate attorney fees.  He emphasizes that Tali made the decision to move, launching the litigation.  And he cites testimony that the company he owns has lost $2 million over the last two years.  To counter, Tali points to David's public assertions that he earns over $1 million per year and has a net worth of over $10 million.  Tali asks for David to pay her appellate attorney fees.  In reply, David contends Tali has sufficient resources to pay her own attorney fees.  Indeed, the record shows Tali received over $6 million dollars in a cash settlement from David in the divorce.

Section 598.36 governs attorney fee awards in modification actions.  The district court "may award attorney fees to the prevailing party in an amount deemed reasonable by the court."  Iowa Code § 598.36.  That language is permissive.  *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013).  We grant considerable discretion to the district court in deciding whether to award trial attorney fees.  *Id.*  And we exercise similar discretion in awarding appellate attorney fees.  *Id.*  Our determination depends on two main factors: (1) the parties' respective abilities to pay and (2) the merits of the parties' positions on appeal.  *Id.*

The district court rejected David's rationale, explaining, "While Tali's move necessitated an adjustment to the visitation schedule, both Parties' inability to work out a new visitation schedule is what required the majority of the fees since this matter when to trial."  We see no abuse of discretion in that explanation.  In the same vein, we find that each party should pay their own appellate attorney fees.  While David placed Tali in the position of defending the modification order, and

she prevailed on appeal, she has ample assets to cover the costs of her appellate representation. We order David to pay the costs of the appeal.

**AFFIRMED.**