**IN THE COURT OF APPEALS OF IOWA**

No. 23-0627
Filed November 21, 2023

**IN RE THE MARRIAGE OF WILLIAM ANDREW PENCE
AND MOLLY SUE PENCE**

**Upon the Petition of
WILLIAM ANDREW PENCE,**
        Petitioner-Appellant/Cross-Appellee,

**And Concerning
MOLLY SUE PENCE, n/k/a MOLLY SUE MYREN,**
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Washington County, Joel D. Yates,

Judge.

        William Andrew Pence appeals and Molly Sue Myren cross-appeals from

the denial of their requests to modify the decree dissolving their marriage.

**REVERSED AND REMANDED ON APPEAL AND CROSS-APPEAL.**

        Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for

appellant/cross-appellee.

        Joseph C. Pavelich of Spies & Pavelich, Iowa City, for appellee/cross-

appellant.

        Heard by Schumacher, P.J., Langholz, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**LANGHOLZ, Judge.**

William Pence and Molly Myren appeal from the district court's denial of their requests to modify their dissolution-of-marriage decree. Both parties argue that the district court erred in not finding that a substantial change in circumstances occurred justifying a modification to their joint physical care of their two school-aged daughters after Myren moved 300 miles away. But they part ways on what should come next. They each seek primary physical care. And Pence goes even further, seeking sole legal custody.

We agree with the parties that Myren's 300-mile move is a substantial change in circumstances that is more or less permanent and was not contemplated by the district court at the time of the dissolution of their marriage. Deciding which parent can best care for the children in these new circumstances is a closer call. But in considering the full record—and especially the greater role that Myren has played in the children's lives as their homeschool teacher—we grant Myren physical care. The parties will retain joint legal custody. And we decline to award appellate attorney fees—particularly when both parties agreed that this appeal was warranted. We thus reverse and remand for further proceedings to determine an appropriate visitation schedule and child support.

## I. Background Facts and Proceedings

Pence and Myren were divorced in February 2021 after eleven years of marriage. At that time, the district court granted them joint legal custody and joint physical care of their two daughters, who were then about ten and twelve years old. The parties' parenting-time schedule of alternating weeks hinged on both parents residing close to Washington, Iowa. Indeed, the decree provided that

Myren would continue to homeschool the daughters—as she had since they started their schooling—with the noted support of Pence. So even on the weeks the girls were in the care of Pence, they spent most of their waking weekday hours with their mother. Recognizing that the family had moved frequently during their marriage and that Myren had talked about relocating to Tennessee, the district court warned that such a long-distance move could result in a modification of the physical-care award.

About a year and a half later, Myren wound up relocating—but to southwest Missouri, not Tennessee. After unsuccessfully trying to get a job with a local church, she found employment with a church in Lebanon, Missouri, that allowed her to work in a religious setting while also continuing to homeschool their daughters during the day. Lebanon is roughly 300 miles away from Washington. This has meant that the children have had to travel 300 miles every weekend for parenting-time exchanges. Myren has been the sole party to drive the full length to exchange the children.

Myren petitioned to modify the dissolution decree in anticipation of her move to Missouri, requesting primary physical care. Pence answered that Myren's petition should be denied or that he should be given primary physical care of the children. Pence also requested sole legal custody, while Myren maintained that the parties should continue to share legal custody of their children.

After a two-day bench trial in March 2023, the district court denied the petition to modify. The court reasoned that Myren's move was not a substantial change in circumstances justifying modification because "neither the original decree nor state law mandates that a move out of state is automatically a

substantial change." The district court also noted that Myren's "desire to move about" was known by Pence for more than a decade and "fully and freely discussed at the original trial." And while the court "acknowledge[d] that shared parenting is more challenging than once contemplated by the Court," it remained "convinced that continued homeschooling and continued shared physical [care] is in the best interests of the girls."[1] Pence appeals—and Myren cross-appeals—this decision.

## II.    Physical Care

We review a district court's decision to deny a modification of the physical-care-provisions of a dissolution decree de novo. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015); *see also* Iowa R. App. P. 6.907. We make our own findings of fact while giving weight to the district court's findings. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013).

A party seeking to modify a joint-physical-care provision to obtain primary physical care must first prove by a preponderance of the evidence that a substantial change in circumstances—more or less permanent and not originally contemplated by the court—occurred after the decree was entered. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). Then, the party must show that he or she is "better suited than [the other parent] to minister to the needs of" the child. *Id.* at 444; *see also Melchiori v. Kool*, 644 N.W.2d 365, 368–69 (Iowa Ct. App. 2002).

---

[1] Despite denying the petition to modify, the district court still made some "minor changes" to the decree. This included requiring the weekly exchange to occur halfway between the parties' homes in rural northeast Missouri and guaranteeing Myren telephone or internet access to the daughters for two hours most weekday afternoons for homeschooling activities when they were in the care of Pence.

Myren's 300-mile move from Washington, Iowa, to Lebanon, Missouri, was a substantial change in circumstances justifying a modification of the parties' decree. In the original decree, the parties alternated care of their daughters weekly. Plus, every weekday during the school year—even those weeks they were in Pence's care—the daughters were with their mother from at least 8:30 a.m. to 4:30 p.m. while she homeschooled them. Engaging in those daily and weekly exchanges is substantially different when the parents are 300 miles away rather than in the same town. Even having to engage in remote learning every other week to avoid the daily exchanges is substantially different than in-person instruction. Because Myren sold her Washington home and accepted a new job, this move is more or less permanent. And there is no indication in the record that the district court contemplated at the time of its original decree that the ordered daily and weekly exchanges would be occurring with the parties 300 miles apart.

Neither party defends the district court's contrary conclusion. The district court seemed to find that the 300-mile move was contemplated at the time of the original decree because of the discussion at trial of Myren's "desire to move about." But Myren had no specific plan to move at that time; indeed, she did not apply for the job that led to this move until a year later. And nothing in the original decree suggests that the district court made the decision to order joint physical care after considering and agreeing that such an arrangement made sense even if the parties lived 300 miles apart. To the contrary, in the original decree, the court ordered that the joint physical care would not start until Pence moved closer to the Washington area. And it warned that if either parent moved, "those are substantial changes in circumstances which could result in a modification action."

To be sure, the district court in the modification ruling correctly noted that neither this language in the decree, nor any provision of Iowa law, automatically makes an out-of-state move a substantial change in circumstances. *See In re Marriage of Thielges*, 623 N.W.2d 232, 237–38 (Iowa Ct. App. 2000) (holding that language in decree cannot "predetermine what future circumstances will warrant a future modification"). *But cf.* Iowa Code § 598.21D (2022) (providing that the move of a parent with "joint legal custody and physical care or sole legal custody" of 150 miles or more "may" be considered a substantial change in circumstances). Still, *this* out-of-state move—of more than 300 miles by a parent with joint physical care who also serves as the children's daily homeschool teacher—*is* a substantial change of circumstances.

We can also understand the district court's equitable judgment that the original joint-physical-care award would be the best option for the daughters. But that ideal status quo is already gone and cannot be maintained. The substantial change in circumstances here does not just make joint physical care "more challenging." It makes it unworkable. And it is not in the daughters' best interests to spend five hours traveling every weekend or to lose the in-person homeschooling they have benefited from for years.

With both parties satisfying their burden to show a substantial change in circumstances warranting modification, we turn to the more difficult question. Each parent argues that they should have physical care of their daughters with only visitation for the other party. Our foremost consideration in physical-care decisions is the best interests of the children. *In re Marriage of Brainard*, 523 N.W.2d 611, 614 (Iowa Ct. App. 1994). We are guided by the factors in Iowa Code

section 598.41(3) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). *See In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007). And our goal "is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Because the parties seek to modify their joint-physical-care award—and thus have both already been found to be suitable parents—we treat this decision as in an original decree and ask: who will be the better parent? *See Melchiori*, 644 N.W.2d at 368–69; *Thorpe v. Hostetler*, 949 N.W.2d 1, 7 (Iowa Ct. App. 2020).

Undoubtedly, both parents love their daughters and want what is best for them. We also agree with the district court—at the time of the original decree and the modification petition—that both parents are suitable caregivers for their daughters. And there are pros and cons, ably pointed out by each parent, to awarding physical care to either of them. This makes the choice a close call. But given that joint physical care is no longer in their daughters' best interests, we conclude that Myren will be the better parent for physical care.

Both before and after the divorce, Myren has been the daughters' homeschool educator. This meant that even after the parties began alternating physical care weekly, during the school year, the daughters spent the vast majority of their time with their mom. Being the primary caregiver does not guarantee the award of physical care, but it is "critical in the development of children," and thus "careful consideration is given in custody disputes to allowing children to remain with the parent who has been" in this role. *In re Marriage of Wilson*, 532 N.W.2d 493, 495 (Iowa Ct. App. 1995); *see also* Iowa Code § 598.41(3)(d) (requiring

consideration of "[w]hether both parents have actively cared for the child before and since separation"). We find this close relationship as parent and teacher to be a significant factor here—tipping the scales to Myren—for a few reasons.

Because of Myren's predominant role in the daughter's lives, she is the closer parent emotionally to the daughters. The court-appointed child and family reporter noted the close bond between Myren and her daughters stemming from their time together. And placing them with Myren will allow in-person homeschooling to continue as it has for most of the daughters' formal education. This will also provide the children with stability in one home.

We are mindful that this placement means some greater separation from the daughters' roots and other family in Washington, Iowa. But the parties did relocate frequently even during their marriage. And placement with Myren will keep the relationship with another, older half-sibling who also lives in Myren's home intact. *See In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). What's more, "our case law places greater importance on the stability of the relationship between the child and the primary caregiver over the physical setting of the child." *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa Ct. App. 1998).

Pence and the child and family reporter also expressed some concern about Myren's ability to support the daughters' relationships with their father if she has physical care. But we see evidence that Myren has taken efforts to encourage that relationship. Those efforts include taking on the sole transportation obligations for the 300-mile weekly trek to their father—despite the original decree's directive that the burden should be shared equally—and avoiding criticism while coaching the

daughters to be respectful and engage with Pence. Regardless, the benefits to the children of this placement outweigh any lingering concerns.[2] We still stress the importance of Myren continuing to provide this support in her interactions with their daughters and in cooperating with telephone and other electronic communication and visitation. Myren and Pence's daughters deserve "the opportunity for the maximum continuing physical and emotional contact with *both* parents." Iowa Code § 598.41(1)(a) (emphasis added).

We thus reverse the district court's denial of Myren's petition to modify and award her physical care of both of the daughters. Because of this change in physical care, the visitation and child-support provisions of the decree must also be modified. Neither party submitted a proposal for their visitation rights if they were not awarded physical care. And both asked for a remand to have the chance to flesh out appropriate visitation if their daughters were not placed in their care. We agree that remand is appropriate for the district court to determine visitation and child support in accordance with this ruling.

### III.   Legal Custody

Given our conclusion that physical care of the daughters should be awarded to Myren rather than Pence, it follows that we also deny Pence's request for sole legal custody. Iowa law strongly favors joint legal custody. *See In re Marriage of Winnike*, 497 N.W.2d 170, 173 (Iowa Ct. App. 1992); *see also* Iowa Code § 598.41(2). And it continues to be appropriate here.

---

[2] We also consider—based on our review of the record—that Myren's move was for valid economic reasons and not motivated by a desire to defeat the joint-physical-care award.

The difficulties the parties have had in communicating and co-parenting do not reach the level of animosity requiring either party to have sole legal custody. *See In re Marriage of Ertmann*, 376 N.W.2d 918, 920–21 (Iowa Ct. App. 1985) (reasoning that while the parties had some trouble communicating, they gave priority to their child's welfare and could communicate sufficiently regarding the child's needs). To weigh against joint custody, the inability to communicate "must rise above the usual acrimony that accompanies a divorce." *In re Marriage of Gensley*, 777 N.W.2d 705, 715 (Iowa Ct. App. 2009) (cleaned up). While there may be some personal animosity between the parties, we are hopeful that both parents will be able to communicate and cooperate regarding legal-custody concerns for their children's sake, and we retain joint legal custody in the parties.

### IV.     Appellate Attorney Fees

Both parties request appellate attorney fees. In this modification proceeding, we "may award attorney fees to the prevailing party." Iowa Code § 598.36; *see also In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). Appellate attorney fees are not a matter of right but rest in this court's sole discretion. *See Maher*, 596 N.W.2d at 568. In determining whether to award attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted). Here, both parties argued that the district court erred in refusing to modify the joint-physical-care provision of their dissolution decree. The merits of the key fighting issue where they disagreed were close. And Myren, the party who ultimately prevailed on the contested issues, does not have a greater financial need than Pence. We thus

decline to award appellate attorney fees and order that appellate costs shall be split equally between the parties.

**REVERSED AND REMANDED ON APPEAL AND CROSS-APPEAL.**